[No. 20200.  Department One.  December 20, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v.
Y. SHIMOAKA, *Appellant.*[1]

[1] CRIMINAL LAW (450)—APPEAL—HARMLESS ERROR—EXAMINATION
OF WITNESSES.  Error, if any, in allowing undue and persistent
cross-examination of the accused to affect his credibility is not
prejudicial where objectionable questions were excluded and
from negative answers nothing derogatory to accused was
elicited.

[2] SAME (92)—EVIDENCE—ATTENDANT CIRCUMSTANCES—NARCOTICS—
CHARACTER OF HOUSE.  In a prosecution for unlawful possession
of narcotic drugs, it is not error to show that the accused at the
time of his arrest was entering a Chinese club house in which
there were rooms for playing games and sleeping.

[3] SAME (316)—INSTRUCTIONS—REQUESTS—ALREADY GIVEN.  It is
not error to refuse requested instructions covered by the court
in other instructions.

[4] SAME (255)—INSTRUCTIONS—INVASION OF PROVINCE OF JURY—
COMMENT ON FACTS.  The statement of the court as to what had
been proven or admitted is not unlawful comment on the evi-
dence, where it occurred in a colloquy between the court and
counsel in which the court misunderstood counsel's admission
and at once made a correction and no one would understand that
the fact stated was to be taken as admitted or proved.

[5] SAME (461) — SENTENCE — CRUEL OR UNUSUAL PUNISHMENT —
TRAFFIC IN NARCOTICS.  A sentence for not less than nine or more
than ten years for illicit traffic in narcotics is not unduly severe
where the statute authorizes punishment by not less than one
or more than ten years.

Appeal from a judgment of the superior court for
King county, Findley, J., entered April 10, 1926, upon
a trial and conviction of possession of narcotic drugs
with intent to sell.  Affirmed.

*Van C. Griffin,* for appellant.

*Ewing D. Colvin* and *Eugene Meacham,* for respond-
ent.

[1]Reported in 251 Pac. 290.

FULLERTON, J.—The appellant, Y. Shimoaka, was convicted upon an information charging that,

"He, said Y. Shimoaka, in the county of King, state of Washington, on the 13th day of December, 1925, wilfully, unlawfully and feloniously did have in his possession a certain narcotic drug, to wit, 5,250 grains of Cocaine, with intent unlawfully and feloniously to sell, furnish and dispose of the same, which said narcotic drug had been theretofore unlawfully acquired by him the said Y. Shimoaka."

The sentence was to a term in the state penitentiary of not less than nine nor more than ten years.

The evidence on the part of the state tended to show that the appellant, at about seven o'clock in the evening of December 13, 1925, was seen by two narcotic agents in the employ of the Federal government passing along a street in the city of Seattle. His somewhat eccentric behaviour attracted the attention of the officers, and they accosted him as he was about to enter a building occupied by Chinese as a club or tong house. On being so accosted, the appellant dropped a package from beneath his coat which, on examination, proved to contain a number of smaller packages, each of which contained a narcotic drug known as cocaine, the total quantity being 5,250 grains. The officers arrested the appellant and took him to the city jail, at which place one of the officers visited him on the next morning. In a conversation had at that time, the officer asked him whether the narcotic found on him was all he possessed. This inquiry the officer states he answered affirmatively, saying further that he at one time had twenty ounces, but had sold all over and above what he then possessed to an unknown Chinaman.

The appellant's version of the transaction was that the package, found on him by the federal officers, was given him at a moving picture show by a white man

to be delivered at a certain address; that he was given one dollar for carrying the package, and did not know, until after his arrest, what it contained; that he had no intent or purpose to sell the package or do anything else with it than deliver it at the address given him. He also put his character in issue; showing by his employers that his reputation for truth and veracity was good, and that his demeanor was that of a law-abiding person.

In rebuttal, the state showed that cocaine had a "street value" of one dollar a grain.

[1] The assignment first to be noticed is that the prosecuting attorney was guilty of misconduct in his cross-examination of the appellant and his witnesses. The appellant testified that he had been employed for a number of years during the fishing season of each year by the Carlisle Packing Company; that the company operated fish canneries in Alaska, in which a number of Japanese and Chinese were employed, and his position was that of straw boss, or second foreman, over such employees. In his cross-examination of the appellant, and of those who knew him at the canneries and testified as to his character, the prosecuting attorney sought to show that these employees were, for the greater part, narcotic addicts, and that the appellant's principal duty was to supply them with narcotics; the evident purpose being to show that the appellant was a dealer in narcotic drugs. The objection, however, is to the form of the questions, and to the persistency with which the prosecutor pursued the inquiry, rather than to the subject of the inquiry. But we find no reversible error in the proceedings, even under this view of the record. The record, as we read it, does not show that the prosecutor was unduly persistent, and to the questions which may have been ob-

jectionable because of their form objections were sus-
tained. Moreover, the questions which the court did
permit to be answered were answered in the negative,
and nothing derogatory to the appellant was elicited
by them. Under the rule announced by us in *State v.
Gleen,* 135 Wash. 153, 237 Pac. 292, and the cases
there cited, the error, if error there was, was without
prejudice.

[2] It is next assigned that the court erred in al-
lowing the state to show the character of the house to
which the appellant was taking the narcotics. The
nature of the testimony on this question, we have
hereinbefore indicated. The witness, describing the
place, said it was a "Chinese club house," "what they
call a tong house," with a large room on the lower floor
where men congregated to play games, while on the
upper floor were sleeping rooms. We fail to see error
in this. Certainly, we think the state was entitled to
show the character of the place to which the appellant
was going when in possession of the drugs, as a part
of the surrounding circumstances characterizing his
acts at the time, which the jury were entitled to con-
sider. We are aware, of course, that there is a wide-
spread belief, however unfounded it may be, that the
members of the Chinese race of people now remaining
in the Pacific coast states are more addicted to the use
of narcotic drugs than are the members of any other
race of people there residing. Assuming that we may
take cognizance of this belief, it would not render the
testimony inadmissible. The fact still remains as a
part of the surrounding circumstances which the state
was entitled to show to the jury.

[3] The appellant requested the following instruc-
tions:

"You will weigh and consider the weight and cred-
ibility of the testimony of the defendant in exactly

the same manner and same way that you do the testimony offered by any witness in the case.

"The defendant is presumed to be innocent and that presumption goes with him throughout the trial, and in considering the credibility of his evidence, you will give him full consideration for the presumption created in his favor by law."

The second of the requested instructions was given, in substance, in language to which no objection could be taken, although not in the precise form in which it was requested. Under our practice, the court is permitted to charge the jury in its own language, and, if in its charge it fully covers the subject of a request, error cannot be predicated thereon. The court in this instance fully complied with the rule.

The first of the requests was, also, fully covered. While the court did not single out the testimony of the appellant and instruct specially thereon, it classed the appellant with the other witnesses in the case, and, with some minuteness of detail, instructed them as to the legal rules by which they should be guided in determining the weight to be given to their testimony. This, we think, is sufficient in any event, but the request itself was not correct in substance. The appellant had a special interest in the result of the case, which all of the other witnesses did not, and any correct instruction must take this circumstance into account.

[4] The state put on the stand a chemist of the federal narcotic division, who had analyzed the contents of the packages taken from the appellant. In the course of his examination by the state the following occurred:

"Q. [By Mr. Meacham, representing the state.] Did you examine the contents of State's Exhibit 'a', these blue packages? A. Yes, sir. Q. What do they

contain? A. Each one of these packages contain approximately 438 grains of Cocaine hydrochloride, manufactured by E. Mark, Darmstadt. I analyzed this package here on December 14, it was turned over to me for analysis by agent Patterson, both the direct and corroborative test, tested to be cocaine. Q. What is cocaine? A. Cocaine is the active principle of cocoa leaves, and its habitat is South America. Q. With reference to whether or not it is a narcotic drug— what is cocaine with reference to whether or not it is a narcotic drug? A. Well, it is a narcotic drug, and that is what is called an alkaloidal; alkaloid or cocoa leaves, it is a, —

"Mr. GRIFFIN: I object to that; it is very interesting but I don't believe it is apropos here; there is no argument on that; the law prohibits the possession of cocaine.

"The Court: On the statement of the defendant the objection is sustained. (No cross-examination.) (Witness excused.) Mr. Meacham: I have phoned for Mr. Jacobson, the City Chemist. Mr. Griffin: What is the purpose, may be I will admit it. Mr. Meacham: Mr. Jacobson will testify he tested these packages and they contain cocaine. The Court: You have proven that by the last witness, they have admitted it in open court, I think that is about enough. Mr. Meacham: If you will admit, he will so testify. Mr. Griffin: I will. Mr. Meacham: You admit those packages contain cocaine, is that? Mr. Griffin: I will admit your evidence shows they contain cocaine. The Court: That is not the question before the court. Mr. Meacham, if you desire to wait until the witness comes, the court will wait."

The claim of error here pointed out is founded on the statement of the court to the effect that the state had proven, and the defendant had admitted, that the packages taken from the defendant contained cocaine. But we find in the circumstance no error. The record, we think, very conclusively shows that the trial judge misunderstood the meaning of the appellant's counsel,

when objection was made by him to the last of the
questions propounded to the witness, and corrected his
mistake as soon as the purport of the admission was
made clear to him. The statement, while made in the
presence of the jury, was not directed to the jury. The
colloquy leading up to it, and following it, was wholly
between the court and counsel. No one, it would seem,
listening to it, would understand, when the colloquy
ended, that the fact stated was to be taken as admitted
or proven. Moreover, in its charge to the jury, the
court made clear the issues they were to determine.
It charged them specifically that:

"In order to convict the defendant of the crime
charged the state must prove to you beyond a reason-
able doubt:

"(1) That on or about the 13th day of December,
1925, the defendant, Y. Shimoaka, in King county,
Washington, wilfully, unlawfully and feloniously had
in his possession a narcotic drug, to wit, cocaine;

"(2) That he had such narcotic drug in his posses-
sion with an intent to sell, furnish or dispose of the
same."

The question is, whether the statement made by the
court was a comment on the evidence, forbidden by
the state constitution. We do not think it can be so
considered.

[5] The appellant finally complains of the sentence
imposed upon him by the court, contending that it is
unduly severe. The permissible penalty for the crime,
as fixed by the statute, is imprisonment in the state
penitentiary for not less than one nor more than ten
years, and here, it will be remembered, the court im-
posed a penalty of imprisonment for not less than nine
nor more than ten years. This court in *State v.
Patchen*, 37 Wash. 24, 79 Pac. 479, said that the ques-
tion was not subject to review in this court. In other

cases, decided both before and since the cited cases, we have discussed the question as if it were one which the court might review for manifest abuse. *State v. Bliss,* 27 Wash. 463, 68 Pac. 87; *State v. Newton,* 29 Wash. 373, 70 Pac. 31; *State v. Van Waters,* 36 Wash. 358, 78 Pac. 897; *State v. Kenney,* 83 Wash. 441, 145 Pac. 450; *State v. Schluter,* 109 Wash. 78, 186 Pac. 267; *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41.

Taking the view that we may inquire into the severity of the sentence, we see no reason to disagree with the trial court in this instance. The illicit traffic in narcotics is direful in its results, and it is a traffic which has given both the state and federal governments much concern. Severe penalties seem to be necessary for its suppression, and we cannot say that, in this instance, the penalty imposed, although it approaches the maximum of the permitted penalty, was an abuse of the discretion with which the trial court is vested.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and MITCHELL, JJ., concur.