[No. 21609. *En Banc.* March 25, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. PRESTON
RAY CLARK, *Appellant.*[1]

[1]Reported in 286 Pac. 69.

48

*James H. E. Scott* and *H. B. Noland,* for appellant.
*W. G. Coleman,* for respondent.

FULLERTON, J.—The appellant, Preston Ray Clark, and one Bessie M. Bidwell were jointly informed against for the crime of murder in the first degree, the particular charge being that they had caused the death of Alpheus Bidwell, the husband of Bessie M. Bidwell, by administering poison to him. The jury, before whom the cause was tried, returned a verdict against Clark as charged in the information, and recommended that the death penalty be inflicted upon him. From a judgment and sentence pronounced in accordance with the verdict, he appeals.

Prior to entering upon the trial, the appellant moved the court for a separate trial, stating as grounds therefor:

"(1) The evidence against said defendants is not the same and this defendant can not have a fair trial if tried jointly with said Bessie M. Bidwell, and the ends of justice require that he be given a separate trial.

"(2) There may be evidence which is admissible against the defendant Bessie M. Bidwell which is not admissible against this defendant, and in a joint trial the said evidence against Bessie M. Bidwell is and would be prejudicial to the rights of this defendant.

"(3) The interests of these defendants are or may prove to be antagonistic and adverse, and this defendant can not obtain justice in a joint trial wherein he will be required to select a jury in common with said Bessie M. Bidwell; and he alleges that he can not and will not be able to join with his co-defendant in the selection of a jury, and by a joint trial will be deprived of his right of challenge in selecting a jury."

The trial court denied the motion, and its action in so doing constitutes the first error assigned.

The right of a defendant to a separate trial, when jointly indicted or informed against with an-

other, is, of course, a matter for statutory regulation. In this jurisdiction, it has been so regulated from the earliest times. (See Laws of 1854, p. 120, § 116; Code of 1881, § 1091; 2 Hill's Code, § 1313; Bal. Code, § 6949; Laws of 1919, p. 42; Rem. Comp. Stat., § 2161). Prior to the statute of 1919, a defendant, jointly indicted or informed against with another, could demand a separate trial as a matter of right. In a few instances (see *State v. Mason,* 19 Wash. 94, 52 Pac. 525; *State v. Moran,* 66 Wash. 588, 120 Pac. 86), the question arose whether the demand was timely made, but the right as a right was never questioned.

In 1919 (Laws of 1919, p. 42), the legislature vested the right to a separate trial in the discretion of the "trial judge," meaning, undoubtedly, the judge sitting as a trial court. That the change made by the statute was radical, is at once apparent. From a right vested absolutely in a defendant, it was changed to one discretionary with the court. The effect of the change has been twice before this court.

In *State v. Franklin,* 124 Wash. 620, 215 Pac. 29, the appellants were jointly informed against for the crime of burglary. They demanded separate trials, which demand the trial court denied. On the appeal, they assigned error on the ruling of the court. In passing upon the question, we quoted the amendatory statute, and contented ourselves with the simple statement that the question was one within the discretion of the trial court.

The question arose again in *State v. Ditmar,* 132 Wash. 501, 232 Pac. 321, and a similar ruling was made, although we there intimated that the discretion exercised might be the subject of review for manifest abuse. It is said, however, that the present case is distinguished from the cited cases in the fact that there is in the present case a showing of necessity for a sepa-

rate trial, while in the cited cases there was not. But this fact cannot affect the rule. While the showing may aid the court in the exercise of its discretion, it neither adds to nor limits its powers. The question is still one on which the court may exercise its discretion, and if the manner of its exercise is reviewable at all, it is only so for manifest abuse.

But, conceding that the ruling may be reviewed for the latter reason, we see nothing in the showing here made which would even indicate that a denial of a separate trial would amount to an abuse of discretion. It would be difficult to conceive of a case where two or more persons are tried for the same crime in which some one or more of the conditions pointed out will not arise, and, if they are to be regarded as requiring a separate trial, it is at once plain that the statute is rendered nugatory, and joint trials will be the exception and not the rule. But such was not the intent of the legislature. There were some real evils which the legislature sought to correct by the change in the statute, the principal one, doubtless, being to lessen the excessive costs to the public which separate trials entailed. But, be the intention what it may, inasmuch as the legislature has vested the right in the discretion of the trial court, there must be reasons more persuasive than those here shown before the reviewing court would be warranted in interfering.

The appellant argues in this connection, however, that the sequel proved that he should have had a separate trial. He points out that there was evidence of some damaging admissions made by his co-defendant, admissible as against her but not as against him, and that these could not but have a prejudicial effect against him in the minds of the jury, notwithstanding the trial judge was careful to inform them that it was evidence only against the defendant making the ad-

missions. But, passing the objection that this is more properly a question to be raised by a motion for a new trial, we find nothing on which to base the conclusion. Were the direct evidence of the appellant's guilt slight or not incompatible with his innocence and the court had to search for reasons to account for the verdict of the jury, the question would present a different aspect, and it might be that we would inquire as to the possible effect of this character of evidence in a capital case, although our oft-repeated holding in lesser offenses has been to the effect that we will not.

But here no such situation is presented. The crime with which the appellant is accused was a most dastardly one. It has not in its favor even a mitigating circumstance. The appellant's guilty participation therein was shown by direct and positive evidence. Indeed, the evidence is so far convincing that it is difficult to conceive how the jury could have returned a different verdict. There is, therefore, no need to inquire into extraneous matters to account for the verdict, and much less is there room for the belief that it may have been founded on evidence which the court told the jury was not for their consideration in determining the guilt of the appellant.

There is still another contention in this connection which it is possibly well to notice here. The appellant was shown to be an epileptic. During the course of the trial, convulsions characteristic of the disease came upon him, necessitating a suspension of the trial for the time being. It is contended that the convulsions were brought about, or at least increased in number, by the undue prolongation of the trial, caused by the fact that he was compelled to go to trial jointly with his codefendant. The particular type of epilepsy of which the appellant is a sufferer does not appear in the record, nor does it appear that any particular con-

dition is necessary to bring a convulsion upon him. Nor was the trial unduly prolonged because of the joinder. Practically all of the evidence on the part of the state was admissible as against both of the defendants, and such as was not so does not take up much space in the record. We can see no reason for the conclusion that he suffered an undue strain because of the joint trial, and no reason for concluding that he would not have suffered in the same way had he been tried separately. The conclusion follows that there was no error in requiring the defendant to be tried jointly with his codefendant.

█ The appellant was a witness on his own behalf. As applicable to this circumstance, he requested the court to give to the jury the following instructions:

"No. 24. You are instructed that the defendant having taken the stand in his own behalf, you should apply the same rules of weighing and considering his evidence as you should apply to that of any other witness.

"No. 28. The law makes the defendants, and each of them, competent witnesses and you have no right to disregard the testimony of the defendants, or either of them, upon the ground alone that he is a defendant and stands charged with the commission of a crime. Either defendant is a competent witness and has a right to testify in his own behalf, and when he does so testify he becomes the same as any other witness and his testimony is to be treated by, and subjected to, the same tests and only the same tests as are applied to any other witness."

The court did not instruct in the form requested, nor did it give to the jury any instruction in which specific reference was made to the appellant as a witness. On the subject-matter of the request, it instructed the jury generally; that is to say, it referred to the witnesses as a body, and gave to the jury the governing rules by which the weight and credibility of the testimony of

witnesses generally is to be determined, and this in language to which no just exception can be taken. While the appellant complains with some bitterness of the action of the court, we find no error therein. The courts are not in agreement on the question whether it is proper to single out the defendant personally and give a special instruction on the weight and credibility of his testimony. Some hold it error so to do, even when the instruction is otherwise unobjectionable, while others, again, hold it error to refuse so to do whenever such an instruction is requested. (See 16 C. J. 1018-1020, for a collection of the cases.) We have not heretofore lent our sanction to either rule.

In the early case of *State v. Nordstrom,* 7 Wash. 506, 35 Pac. 382, we held it not to be error, in giving the usual cautionary charge as to the credit to be given to witnesses, to add to the charge the words: "In the case of the defendant you have the right to consider the great interest he has in your verdict," although it was added that it might be questionable whether he ought to be singled out as pointedly as was there done—the question being passed because no claim of error was based on that ground. A similar holding was made in the case of *State v. Carey,* 15 Wash. 549, 46 Pac. 1050, where a claim of error was based on the instruction.

In the case of *State v. Shimoaka,* 141 Wash. 337, 251 Pac. 290, the precise question now before us was presented, and we there held that the court complied with its duty, when it classed the defendant with the other witnesses in the case and gave to the jury the rules by which they were to be governed in determining the weight and credibility of testimony.

Nor are we persuaded, although it is so contended, that our holdings are inconsistent. The questions for consideration in every instance are, has the jury been misled, and have the rules for weighing testimony been

correctly stated; and it would seem that a correct instruction can be given, no matter in what form the instruction is presented. In the instant case, we cannot follow the appellant's argument to the effect that the jury were not given a rule by which his testimony is to be measured. The jury knew he was a witness in the case, and must have known that the court's general reference to the witnesses included him as all others who testified at the trial. See, also, *State v. White,* 10 Wash. 611, 39 Pac. 160, 41 Pac. 442; *State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *State v. Coates,* 22 Wash. 601, 61 Pac. 726.

▮ It is next assigned that the court did not instruct the jury upon the appellant's theory of the case. The testimony on the part of the state tending to show the appellant's guilty participation in the acts which resulted in the death of Bidwell was in part direct and in part circumstantial. The circumstantial evidence consisted in part of acts performed by him, which, while they had a more or less direct connection with the tragedy, were acts which standing alone were consistent with the theory of his innocence. He requested the court to instruct the jury that, if any fact or circumstance appeared in the case susceptible of two conclusions, or two constructions, one consistent with the innocence of the defendant and the other consistent with his guilt, it was the duty of the jury to adopt that construction or conclusion which is most favorable to the defendant and acquit him, unless the other evidence in the case established his guilt beyond a reasonable doubt.

The court refused, we think rightly, to give the instruction, either in the form submitted, or in its substance in language of its own choosing. Some of the acts and circumstances, to which reference is made, had a vital bearing on the appellant's guilt when considered

with the other facts of the case, although in themselves they could have been entirely innocent. It was thus for the jury, and not the court, to determine what bearing they had upon the general question of the appellant's guilt, and the jury were entitled to take them into consideration when considering the question of his guilt and give them such an interpretation as they deemed the evidence as a whole warranted. To give the instruction requested would have been to withdraw all such acts and circumstances from the consideration of the jury, to an advantage to the appellant not warranted by the rules governing in such instances.

■ The appellant requested the following instruction which the court refused to give:

"In this case the defendant Bidwell is charged as an accomplice with the defendant Clark in the commission of the alleged crime and she has testified as a witness. I instruct you that, in so far as her testimony refers to or relates to the statements or conduct of the defendant Clark, it should be scanned with care and caution by the jury."

The defendants were charged as principals in the commission of the crime, not one as the accomplice of the other. But, conceding that, since the one defendant sought to cast the blame upon the other, the defendants were entitled to the usual cautionary instructions required in the case of accomplices, we think the court fully complied with the rule. It instructed the jury that neither of the defendants could be convicted on the unsupported testimony of the other; an instruction more favorable to the appellant than was the requested instruction.

■ The refusal of the court to give the following instruction is assigned as error:

"You are instructed that you should entirely disregard and not consider any evidence from any witnesses

as to any alleged statements made by Alpheus Bidwell not in the presence of the defendant.''

But the court, throughout the trial, whenever testimony was offered, admissible against one of the defendants and not against the other, distinctly stated to the jury the defendant against whom the evidence could be considered. It was so in the instance pointed out by the appellant to which he contends the instruction was applicable. A witness, called on behalf of the state, while being cross-examined by counsel for Mrs. Bidwell, was asked concerning certain statements made by the subsequently deceased Bidwell. To this the attorney for the appellant objected, when the court stated to the jury that any statement so made would not be evidence against the appellant. In its general charge, furthermore, it instructed the jury that they must not consider any testimony that has been stricken out, or withdrawn from their consideration, by express ruling of the court during the trial of the cause. Clearly, the rights of the appellant were fully protected.

██ The court gave the following instructions:

''If you find from the evidence that the defendants, or either of them had an inferior or untrained intellect or that the moral perceptions of the defendants, or either of them, was of a low order, this would not excuse or justify the defendants, or either of them, for violating the law. If a person does an unlawful act knowing the nature and quality of the act committed and that it is wrong, he is amenable to punishment, notwithstanding the possession of an inferior or untrained intellect or a low order of moral perception. . . . All persons are of sound mind who are neither idiots, lunatics, or afflicted with insanity.''

The objection to this instruction is that it is not pertinent to the evidence in the case. But we cannot so conclude. The record is replete with references to the low order of intellect of each of the defendants, and a

58

cautionary instruction on the matter was not improper or erroneous.

█ The court gave instructions on the law relating to aiding and abetting. It is not questioned that these were correct in form, and correct as abstract principles of law, but it is contended that they were inapplicable to the facts or the issues in the cause, and thus erroneous and prejudicial. The charge in the information is in substance that the defendants conspired together to kill and murder the person named in the information and, in pursuance of the conspiracy, did so kill and murder him. There was evidence to support these allegations, and evidence that the defendants aided and abetted each other in carrying out the conspiracy as planned. It was not definitely shown which one of the defendants actually put the poison into the food which the person killed afterwards ate, but it was shown that both were present at the time and that each assisted the other in the preparations for the act and in the acts taken to conceal the evidence of the crime. The instructions were given to meet these conditions, and were without error. *State v. Klein,* 94 Wash. 212, 162 Pac. 52; *State v. Owsley,* 126 Wash. 197, 217 Pac. 999; *State v. Curtis,* 127 Wash. 273, 220 Pac. 769; *State v. Nolon,* 129 Wash. 284, 224 Pac. 932; *State v. Nichols,* 148 Wash. 412, 269 Pac. 337; *State v. Baker,* 150 Wash. 82, 272 Pac. 80.

█ The prosecuting attorney was put upon the witness stand and interrogated as to certain statements in the way of admissions made by the defendants. The question arose whether certain of these were admissible, when the court caused the jury to retire to their chambers, and heard the explanations and arguments of counsel in their absence, finally ruling that the evidence offered was inadmissible. The record thereupon discloses the following:

"MR. BENSON: While the jury is out we may get one more proposition out of the way. When the jury returns I will ask Mr. Coleman this question: What if anything was said with reference to Mr. Clark accusing her in the morning. THE COURT: Do you mean that you are going to ask Mr. Coleman whether or not Mrs. Bidwell made that statement? MR. BENSON: Yes. THE COURT: I would exclude that. (Jury returns) MR. BENSON: On that one proposition, suppose we prove that he said something and they both agreed on it? THE COURT: That does not make any difference. MR. COLEMAN: Can't I testify to what she said there in the home on the subject? MR. NOLAND: I will cite counsel's conduct as misconduct and will ask the court to dismiss this case. THE COURT: Refrain from making any remarks of that kind. They are not proper under the ruling the court has made. If you will read the case of the state against Lida I am following the rule laid down there and I want to adhere to it. The rule is this: Testimony or statements made or admissions by or the conduct of either defendant in the absence of the other defendant are not admissible as against the defendant who does not make that statement, and therefore whatever statement is attributed to either one or the other of the defendants, as having been made by one defendant, must be confined to what that defendant said concerning that defendant's own conduct or actions and reference to the other defendant must be eliminated from that class of testimony. This testimony of conversations had must be limited to what either defendant said about himself and not the other defendant. MR. NOLAND: Pardon me, but I wish to ask that I be permitted to cite the remark of counsel as misconduct and I claim it as against the prosecuting attorney for the remark made in the presence of the jury as such misconduct as cannot be cured by an instruction and ask that the jury be dismissed and that we be allowed to take a mistrial for misconduct. MR. CASEY: I will join in the motion. THE COURT: The jury is instructed to pay no attention to the remark of Mr. Benson made in respect of the matter. The motion

made by the attorney for the defendants will be overruled and exception allowed.''

It is the contention of the appellant that the conduct of the attorneys for the state was so far prejudicial as to be incapable of cure by the admonitions of the court, and for that reason require a new trial. A somewhat extended argument is made on the question, and we are cited to certain of our cases where we have held that there can be conduct of such a nature as to be incapable of cure by admonitions to the jury. But we see nothing here sufficient to bring the matter within the rule of the cited cases. As we said on another occasion, the cited cases presented extreme instances of misconduct; instances where the attorney had sought to bring before the jury matters wholly foreign to the issues with no other apparent purpose than to prejudice the minds of the jury against the other party to the cause. The record here presents nothing of this sort. There is nothing to indicate to the jury the character or substance of the testimony to which reference was made, and it is not to be supposed that the jury gave the questions of counsel and the witness, addressed to the court as they were, any undue weight.

We have held in a long line of cases, too numerous to require citation here, that errors of this sort can be cured by instructions.. Indeed, this must be the rule, else every inadvertence occurring at the trial would be cause for reversal.

But it is said that the defendant is entitled to have the instructions to the jury given in writing, and that here the instruction was oral. But the rule to which reference is made applies only to the final instructions given to the jury by the court, not to admonitions and instructions given to the jury during the course of the trial. Furthermore, we have hereinbefore called at-

tention to the fact that the court did, in its written instructions, charge the jury not to consider any evidence that had been stricken out or withdrawn from their consideration.

 The record shows the following (we quote from the abstract):

"Q. When, if at all, did Mr. Clark ever state to you that he knew the brains that were served at the breakfast table at the Bidwell home the morning of Alpheus Bidwell's death contained strychnine? MR. NOLAND: I object to the question for the reason that it is leading. THE COURT: The objection is sustained, it is not only leading but it is suggestive. MR. NOLAND: We cite it as misconduct of counsel, and such misconduct as to entitle us to a mistrial in this case and we move accordingly. THE COURT: I will not discuss the question, but I will deny the motion. Exception taken. WITNESS: May I ask myself a question? THE COURT: No.".

Manifestly, we think, there is nothing in this on which error can be predicated.

 In the brief of the appellant is the following:

"Defendant Clark was unable and unfit to be present at all stages of the trial. The burden is upon the state and it is not the business or duty of the defendant to look after either the presence or the fitness of a defendant in a criminal proceeding. Defendant's presence must appear affirmatively from the record, and the court's failure to call a mistrial when Clark was found to be in an unfit condition to proceed, and failure to grant a new trial because of Clark's absence and sickness rendering him unfit to defend are assigned as error.

"The fact that Clark has an immature mind is all the greater reason why he should be at his best during all stages of his trial. He was in custody. The state was bound to insure his mental and physical presence at every stage of the trial. . . . We contend for Clark that at times during this trial he was not mentally present, and that other times he was neither mentally or physically present."

We find nothing in the record which supports the statement that the appellant was not physically present at all stages of the proceedings where his presence is required. The journal entries of the clerk, where this fact is usually recorded, were not brought up with the record, and we, of course, have no knowledge of their contents. But it does appear in the statement of facts that he was personally present at the opening of the trial, and there is nothing therein or elsewhere in the record before us to indicate that he was not so present at all of its subsequent stages. The presumption is in favor of regularity, and where it is shown that the defendant was present at the beginning of the trial, it will be presumed that he was present during the subsequent proceedings, in the absence of an affirmative showing to the contrary. *State v. Costello,* 29 Wash. 366, 69 Pac. 1099.

The contention that the appellant was not "mentally" present at all times during the trial is founded on the fact heretofore noted. The appellant, as we have said, is an epileptic, and during the course of the trial the convulsions characteristic of that disease came upon him. Neither of the counsel state in their briefs how many of such attacks the appellant had during the course of the trial, but we do not discern from our examination of the record that they were numerous. Whenever such an attack occurred, the court suspended the trial until it was reported that he had fully recovered. One of the attacks, seemingly, was quite severe. It occurred on the afternoon of a Friday and the trial was not resumed until the following Monday, and the principal complaint seems to be that he was not then in a mental condition to resume the trial. It is significant, however, that no objection to proceeding with the trial was then made either by the defendant himself or by his able and

diligent counsel. The facts concerning his then condition appear in affidavits filed in support of a motion for a new trial after the return of the verdict. But there were counter-affidavits filed, contradictory of those filed by the appellant, and we do not find that the weight of the evidence supports the contention.

Nor was the trial judge negligent in his precautions to see that the appellant was mentally fit at all times to be present at the trial. He caused the appellant to be put in charge of a special bailiff, and caused a physician to be in attendance at all times during the trial, and instructed both the bailiff and the physician to report to him whenever the appellant gave indications of mental unfitness to proceed with the trial, and this regardless of suggestions coming from any of the parties to the cause.

We have said that the record discloses that the appellant is of a low order of mentality, but it must not be understood that he is an imbecile. The record abundantly shows that he was fully aware of the nature of his offense, and fully aware of the consequences that might follow were his connection with it discovered.

There was a motion for a new trial in which it was contended that the evidence was insufficient to support the verdict of the jury. But this contention does not merit extended discussion. As we have before noted, the evidence was such as to put the question beyond the pale of legitimate debate.

The judgment is affirmed.

MITCHELL, C. J., PARKER, TOLMAN, MAIN, BEALS, MILLARD, and FRENCH, JJ., concur.

HOLCOMB, J. (dissenting)—I can concur in the conclusions reached by the majority upon all the issues involved in this appeal, were I convinced that the denial of a separate trial for this appellant was without

prejudicial error and that he could have a fair trial when jointly tried with his codefendant, Bessie M. Bidwell.

To my mind the record amply discloses that he could not have a fair and impartial trial when jointly tried with her. It seems to me that the results reached by the jury so prove. Although he and his codefendant had been guilty of libidinous conduct together for some time, she was much the more intelligent of the two and had more initiative than he. Yet she was acquitted of murder in the first degree and found guilty only of murder in the second degree by the same jury. *State v. Bidwell*, 150 Wash. 656, 274 Pac. 716.

Throughout the trial the interests of the two defendants grew more and more antagonistic. While the trial judge was very alert and ably discriminative in separating the evidence that was admissible as against his and that which was admissible only against his codefendant, and advising the jury accordingly, such conflicts recurred frequently and could only result in the greatest confusion in the minds of the jury. Jurors would naturally be more antipathetic toward the male defendant, who was proven to be the paramour of the woman, than toward her.

There could have been no legal objection to the granting of separate trials, other than that of economy in time and money in the trial.

To my mind the evidence fully discloses that the three grounds upon which the motion for separate trial was made by appellant were well founded and more and more strongly manifested throughout the trial.

We have often concluded that the trial court abused its judicial discretion in denying rights to a party which were disclosed to be well founded by the record. While I do not hesitate to say that the trial judge con-

ducted the trial most ably, in my opinion he erred in refusing separate trials, that this appellant suffered greatly from that denial, and should have a new trial.

I therefore dissent from the conclusion of the majority upon that one question.