[No. 26306. Department One. January 6, 1937.]

The State of Washington, *Respondent,* v. Edward Crossman *et al., Appellants.*[1]

*Chas. R. Lewis, Doane Brodie,* and *Geo. D. Abel,* for appellants.

*M. W. Logan* and *Oliver R. Ingersoll,* for respondent.

Geraghty, J.—The appellants, Edward Crossman and Wilfred Shorter, were convicted of the crime of grand larceny and sentenced to terms in the state peni-

[1]Reported in 63 P. (2d) 934.

tentiary. The information upon which they were tried charged that,

" . . . on or about the 2nd day of April, 1936, they each then and there being, did each then and there jointly, wilfully, unlawfully and feloniously take, steal and carry away one brown Swiss cow, the property of one J. C. Van Cleave, with the intent to defraud and deprive the owner thereof of his property, the said cow being of the value of more than Twenty-five dollars of lawful money of the United States of America."

The evidence tended to show that, after being brought to the ground by a shot, the cow's throat was cut. A part of the carcass was discovered by the owner lying in an abandoned road; the hind quarters had been removed. With the carcass was found the remains of a large unborn heifer calf. The bones of the hind quarter were found buried on the premises of the appellant Crossman. The meat, which had previously been removed from the bones, had first been hidden, and later buried in the water of an adjoining bay, to avoid detection.

Crossman admitted the killing in a written confession, which recited that he had been aided by another person, unnamed. The evidence connecting Shorter with the crime was circumstantial, apart from an admission made by him to a deputy sheriff, in jail after his arrest.

When the report of the killing of the cow was made to the sheriff's office, a deputy was detailed to make an investigation. Suspicious circumstances pointed to Shorter's connection. He and Crossman had been cutting wood on the day the cow was slaughtered, April 2, 1936, and he stayed at Crossman's that night. In their operations, a Ford truck was used, borrowed by Shorter. The sheriff found tire tracks in the soft earth with peculiarities indicating they were made by

the truck. There were also the prints of rubber boots, which the officer testified were made by the boots worn by Shorter at the time. The officer also testified to the presence of cow hair on clothing found in Shorter's home on the day following the killing and admitted by Shorter to have been worn the day before.

On the day following the killing, the sheriff interviewed Shorter and, after his denial of complicity in the transaction, told him to report at the sheriff's office the next day. That evening, the sheriff visited the home of Van Cleave, owner of the cow, and found Shorter present. Van Cleave testified that, before the arrival of the sheriff, Shorter had sought to settle the matter up and pay for the cow, as he intended to go to Alaska. The deputy sheriff testified that he asked Shorter, after his confinement in the jail, if he had "anything to do with this cow out there," and that Shorter answered: "Well, I guess I did. If I hadn't been drinking I wouldn't have done it." On cross-examination, the witness explained that the question and answer had relation to the killing of the cow, to which the conversation related. The appellants introduced no evidence.

The first contention of the appellants is that the theft of the live animal was not established by the evidence, but, at most, only the taking of the two hind quarters, the meat of which, owing to the condition of the cow, was worthless or, at any rate, of less value than twenty-five dollars. While it is admitted that the cow was worth one hundred dollars alive, there was no proof of the value of the meat taken, other than the statement of the owner that the meat was worthless except for dog food.

The shooting down of the cow and cutting of her throat were the means adopted to accomplish the theft. The legal effect of the manner in which possession of

the cow was taken would not be different if she had been loaded alive into the truck and driven away. The appellants had a choice of means for the accomplishment of their purpose and chose the method disclosed by the evidence.

In a comparatively recent case, *McIntosh v. State,* 105 Neb. 328, 180 N. W. 573, 12 A. L. R. 798, the record disclosed the following facts: The accused, having arranged to sell a chunk of meat, procured a rifle from one man and an axe from another and, in company with a companion, left town in an automobile on the afternoon of the same day. The complaining witness, having observed some commotion among his cattle, rode in that direction and, on approaching, saw an automobile driving rapidly in the pasture. On investigation, he discovered that one of his steers had been killed, and its head severed. The carcass had been dragged some distance from where the animal was shot. The accused, on being arrested, admitted the killing, stating that he shot the steer while sitting in his automobile and that it was dragged a distance from the spot and the head severed. It was contended by the accused that the circumstances did not show the stealing and carrying away of the steer; that there was no possession by him of the steer as a living animal. Commenting upon this contention, the court said:

"The testimony shows a clear and unmistakable intent on the part of the accused to steal the steer and sell the meat. To aid himself in carrying out this purpose, he shot and killed the steer, took possession of the carcass, dragged it some distance from the spot, where, after severing the head from the body, he became apprehensive of detection, and fled. We think the facts bring the case within the inhibition of the statute. Of course, if the steer had been accidently or recklessly killed, and the carcass had been found by the defendant and feloniously stolen, such facts would not

be a stealing of the steer within the meaning of the statute.''

The Nebraska court cited *Frazier v. State,* 85 Ala. 17, 4 So. 691, 7 Am. St. 21, where the evidence disclosed that the accused had shot and killed a hog and covered the carcass with pine tops in order to conceal it until he could return and remove it. In that case, the court said:

''If the defendant shot and killed the hog, with the larceny of which he is charged, in a pine-thicket in the field, with felonious intent, and covered it with pine-tops, in order to conceal it until he could return and secretly remove it; and if he subsequently removed it, in pursuance of the previous felonious intent, there was, in the legal acceptance of the terms, a taking and carrying away, sufficient to complete the offense, though the removal may have been with the consent of the owner, if such consent was procured by intentional misrepresentation and deception.''

The appellant Crossman, having admitted his participation in the killing of the animal and the attendant circumstances of its removal, was in legal effect as guilty of the theft of the cow as if he had driven her off the premises or loaded her alive into the truck.

It is contended on behalf of the appellant Shorter that the evidence was insufficient to charge him with participation in the killing, that at most the evidence only tended to show that he had taken part in the removal of the hind quarters after the cow had been slaughtered, and that, since the value of the meat was not proved, he was guilty only of the crime of petit larceny. But we think the circumstantial evidence, coupled with his admission to the deputy sheriff, was sufficient to sustain the verdict.

As we have seen, appellant Crossman made a written confession in which he said that he, with another, had done the killing. Shorter objected to the

reception of this confession, since he was not present when it was made. In permitting the introduction of the confession, the court instructed the jury that they were not to consider it in weighing the guilt or innocence of Shorter.

The sheriff testified that, in conversation with Crossman, he inquired of him who had shot the animal, to which Crossman answered that he had. He was then asked, "Did you do this all alone?" to which Crossman answered, "No, Gerald, I couldn't do that alone; one man couldn't do that; you know that." At this point, counsel objected that the conversation had not taken place in Shorter's presence. The court permitted the witness to continue with the statement, with the understanding that the jury was not to give any consideration to it so far as Shorter was concerned. Continuing, the sheriff testified: "And I said, 'Just you and Wilfred Shorter?' And he said, 'Yes, that was all.' "

The statement made to the sheriff and the written confession were, of course, properly admissible as against Crossman. Their admission, with the court's admonition to the jury to disregard them in so far as Shorter was concerned, was not error.

"The rule is very clear that the confessions must be given as made. If we strike out any part, then the confession ceases to be the confession as made. The rule in such cases is clearly to let all the defendant said be given, and the jury cautioned not to consider it against any one, except the man who makes it." *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415.

See, also, *State v. Johnny Tommy,* 19 Wash. 270, 53 Pac. 157; *State v. Clark,* 156 Wash. 47, 286 Pac. 69, 85 A. L. R. 502; *Flowers v. State,* 69 Fla. 620, 68 So. 754, L. R. A. 1915E, 848.

■ The appellants assign as error the refusal of the court to give a number of instructions requested by them. The exceptions were based upon the assigned reason "that the same is a correct statement of the law, applicable to the evidence presented herein." As the instructions given by the court adequately covered the issues, there was no necessity for additional instructions, and the court was not required to give them even though they were correct abstract statements of the law.

■ Exceptions were taken to two instructions given by the court. We need note only one of them, instruction No. 12. The gist of this instruction is found in the following language:

" . . . that is to say, that in order to constitute grand larceny, something of a value greater than $25.00 must be taken, and if in this particular instance you should find that the cow prior to the killing was of a value of greater than $25.00 and that thereafter of a lesser value than $25.00, then in order to constitute grand larceny the defendant upon whom you are passing must have been present at the shooting or have in some way been a party thereto in order to be guilty of grand larceny."

It is contended that, in this instruction, the jury were given to understand that either of the defendants could be found guilty of grand larceny if he had been merely present at the shooting. In any event, the instruction could not be prejudicial to Crossman, since if he was guilty of anything, it was the shooting and disposal of the carcass. The instruction was evidently intended to meet the evidence in respect of Shorter's connection with the transaction and made it possible for the jury to find him guilty of simple or petit larceny if they concluded he had done no more than steal some of the meat worth less than twenty-five dollars, not having participated in the killing either actively or by counsel-

ing, aiding, and abetting. If Shorter was present at the killing and aided Crossman in disposing of the carcass, he was guilty as a principal, equally with Crossman.

The judgment is affirmed.

MILLARD, C. J., MAIN, BLAKE, and STEINERT, JJ., concur.