[No. 30718. Department Two. July 5, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. CLARENCE
MILES, *Appellant*.[1]

*Warren Hardy*, for appellant.

*Charles O. Carroll* and *Herbert H. Davis*, for respondent.

ROBINSON, J.—In October, 1947, appellant, Clarence Miles, and two other persons, James F. Davis and John M. Dooley, were charged, in a joint information by the prosecuting attorney of King county, with the crime of burglary in the second degree. The presiding judge of the superior court of King county appointed a Seattle attorney, Robert A. Yothers, to conduct Miles' defense.

[1]Reported in 207 P. (2d) 1209.

Shortly before the cause came on for trial, Mr. Yothers moved that Miles be given a separate trial, for various reasons stated in the motion and restated and supported by his supporting affidavit. Mr. Yothers contended, in Miles' behalf, that Davis and Dooley were antagonistic to Miles, and, in fact, had been the cause of his arrest by making certain statements and confessions to police officers, not in Miles' presence, tending to incriminate Miles, which would not be admissible against Miles if he was tried separately, but would be admissible as against Davis and Dooley if the three defendants were tried jointly, to the great prejudice and injury of Miles, and that no trial instruction could prevent that result.

Mr. Yothers further averred:

"That he has discussed this case with the Defendant, Clarence Miles, and with the other Defendants, John M. Dooley and John F. Davis, and with the attorneys for the Defendants, Louis T. Silvain and Chester R. Hovey and has determined that the interests of the Defendant, Clarence Miles, and the other Defendants are antagonistic and prejudicial to the Defendant, Clarence Miles.

"That the interests of the Defendants and of the attorneys for the Defendants are so antagonistic that the Defendant, Clarence Miles, and your affiant could not join with the attorneys in their challenges in the selection of a jury."

Miles' motion for a separate trial came on for hearing on April 9, 1948, before the Honorable Malcolm Douglas, one of the judges of the superior court of King county, and was by him denied. The motion was renewed, and the cause came on for trial before the Honorable Allan Pomeroy on the following April 29th, and was again denied. On May 5, 1948, the jury returned a verdict of guilty as to all defendants. All three defendants moved for a new trial, and Miles moved for an order arresting judgment. These motions were argued on May 15th, and all were overruled. Thereupon, defendants Davis and Dooley were sentenced, but the prosecuting attorney filed a supplemental information charging Miles with being an habitual criminal.

The information contained four paragraphs, each alleging a former conviction of Miles of a felony. The first of

these alleged a conviction of robbery in King county in 1923; the second alleged a conviction of burglary in Snohomish county in 1931; the third alleged a conviction of burglary in the second degree (count I) and of robbery (count II) in Spokane county in 1932; and the fourth alleged a conviction of burglary in the second degree in King county in 1948 (this being the conviction involved in this case). The jury found that the defendant had not been convicted as alleged in 1923, but that he had been convicted on the subsequent occasions; and it found Miles to be an habitual criminal.

On July 24, 1948, Miles was brought before Judge Pomeroy for the imposition of judgment and sentence on the verdict of the jury returned in his court on May 5, 1948, finding Miles guilty of burglary in the second degree. The court, taking into consideration that Miles had subsequently been found to be an habitual criminal, pronounced a judgment and sentence which reads, in part, as follows:

"That whereas said defendant having been duly convicted in this court of the crime of burglary in the second degree and having been duly convicted in this court of the crime of being an habitual criminal, as charged in the supplemental information herein,

"It Is Therefore Ordered, Adjudged and Decreed that the defendant is guilty of the crime of burglary in the second degree as charged in the information herein, and that the defendant has been found to be an habitual criminal as charged in the supplemental information herein, and that he be punished by confinement at hard labor in the penitentiary of the state of Washington for the term of his natural life."

This, of course, is the judgment and sentence from which this appeal was taken.

This appeal comes to us upon a short record, as permitted by Rule of Court 9(2), 18 Wn. (2d) 10-a.

In due course, appellant's attorneys filed his statement of facts, with a statement of the points on which they intended to rely on the appeal. In that statement, it is said, on behalf of the appellant, that the first point that would be relied on on appeal would be the denial by Judge Douglas of appel-

lant's motion for a separate trial, and the second point, the denial of the same motion by Judge Pomeroy, when renewed at the beginning of the trial; but that no question relative to the admission or rejection of evidence, or relating to the giving or refusing of instructions, or to the sufficiency of the evidence to support the verdict, would be raised upon the appeal. It was further said that it would be conceded that no error was committed by Judge Findley in presiding at the trial on the supplemental information. The statement concludes with the following paragraph:

"That the sole claim of error upon which the defendant relies is that on the 24th day of July, 1948 when said defendant came up for sentence before the Honorable Allan Pomeroy for sentence, that it was conceded that the evidence taken before the Honorable Howard M. Findley and the exhibits in evidence taken at said trial showed that the defendant was sentenced in Snohomish County, Washington on May 16, 1931 for Burglary in the Second Degree; that he took an appeal to the Supreme Court and was out on bail at the time of the commission of the offense of Burglary in the Second Degree and Robbery for which he was sentenced in Spokane County, Washington on January 16, 1932. That thereafter the remittitur came down from the Supreme Court in February, 1932 and that defendant served the sentences from Snohomish County and Spokane County consecutively with no period of freedom intervening. It is contended that the Honorable Allan Pomeroy erred in refusing to sign defendant's proposed sentence of from ten years to life imprisonment and in signing the State's proposed sentence of imprisonment for the term of his natural life."

However, appellant's brief sets up the following assignments of error:

"(1) That the Honorable Malcolm Douglas erred in overruling appellant's motion for a separate trial.

"(2) That the Honorable Allan Pomeroy erred in overruling appellant's motion for a separate trial when the same was renewed before him at the time of trial.

"(3) That the Honorable Allan Pomeroy erred in overruling appellant's motion for a new trial.

"(4) That the Honorable Allan Pomeroy erred in sentencing appellant to a term of his natural life, instead of a term of from ten years to life."

We are somewhat handicapped in giving proper consideration to assignments Nos. 1 and 2, due to deficiencies in the record. As has been shown earlier in this opinion, Mr. Yothers' principal reason for moving for a separate trial for Miles was that he knew that Davis and Dooley had made a written confession which, he alleged, incriminated Miles. It was his position that such a confession would not be admissible as against Miles in a separate trial, but would be admissible in a joint trial as against Davis and Dooley, and, if so admitted, would be prejudicial to Miles.

The short statement of facts shows, at its very beginning, that the very first witness, a police officer called by the state, testified that Davis and Dooley made a statement to Tacoma police officers on October 22, 1947, concerning the crime charged, and that he reduced it to writing and Davis and Dooley signed it. The witness had the statement with him, and it was marked "State's Exhibit No. 32." We find, on the next page of the statement of facts, the following:

"State's exhibit number 32 was offered in evidence and admitted, and that at the time of its admission in evidence the court instructed the jury, orally, that they must disregard the confessions of James F. Davis and John M. Dooley, insofar as the defendant, Clarence Miles, was concerned."

The certificate to that portion of the statement of facts covering the trial of the original joint information before Judge Pomeroy was made by his successor judge in department No. 2, and recites that "Exhibits Nos. 1 to 32 are hereto attached." Exhibit No. 32, introduced in the trial of the original joint information, would be of great value in inquiring whether there is any merit in assignments Nos. 1 and 2; and particularly whether such error, if any, was cured by the oral instruction to the jury just above mentioned. But the only exhibits sent to this court are those introduced during the trial of the supplemental information. We do not have exhibit No. 32, and must consider the first two assignments without it.

In 1923, this court held, in *State v. Franklin*, 124 Wash. 620, 622, 215 Pac. 29, that the question of whether defendants, jointly informed against, should be granted

separate trials, is one within the discretion of the trial court. It could not well have been held otherwise, since chapter 16, Laws of 1919, p. 42, amended a prior statute to read as follows:

"When two or more defendants are indicted or informed against jointly, any defendant requesting it may, in the discretion of the trial judge be tried separately." Rem. Rev. Stat., § 2161 [P.P.C. § 140-27].

It is said, in *State v. Clark*, 156 Wash. 47, 50, 286 Pac. 69, 85 A.L.R. 502, that, prior to that amendment, a defendant, jointly indicted or informed against, could demand a separate trial as a matter of right. It is further said that the change made by the statute was radical, in that: "From a right vested absolutely in a defendant, it was changed to one discretionary with the court." That had been held in previous decisions rendered after 1919. *State v. Franklin, supra; State v. Ditmar*, 132 Wash. 501, 510, 232 Pac. 321. It is said, of the 1919 statute, in *State v. Baker*, 150 Wash. 82, 98, 272 Pac. 80:

"This provision has been recognized as giving to the superior court very large discretionary powers in disposing of applications for separate trials of defendants who are jointly charged."

In a comparatively recent opinion in *State v. Guerzon*, 23 Wn. (2d) 242, 160 P. (2d) 603, a similar view was expressed. A liberal quotation is made from the opinion in *State v. Clark, supra*, including the following:

"The question is still one on which the court may exercise its discretion, and if the manner of its exercise is reviewable at all, it is only so for manifest abuse."

Conceding that the ruling of the trial court may be reviewed for the latter reason, we see nothing in the showing here made that would permit us to hold that the denial of a separate trial of the appellant amounted to an abuse of judicial discretion. The reasons given in support of the motion for a separate trial were stated in the language of conclusions rather than definite facts. The evidence which would be hurtful to the appellant or prejudicial to him, as asserted, was not detailed, and on account of the short rec-

ord sent up we have but little of the evidence adduced at the trial. We see nothing in the record which would warrant us in holding that either Judge Douglas or Judge Pomeroy abused his discretion in overruling appellant's motion for a separate trial.

Appellant, however, argues that he should not have been adjudged an habitual criminal, subject to the penalty of life imprisonment. Rem. Rev. Stat., § 2286 [P.P.C. § 112-61], requires two previous convictions of felonies before such an adjudication may be made. Appellant's contention is based on the fact that, at the time he was convicted for robbery in Snohomish county, his appeal from the conviction for burglary in Spokane county was still pending; and that, the first conviction not having been final at the time of the second conviction, it cannot be used in establishing him as an habitual criminal. But at the time of the trial with which we are concerned, each of the prior convictions was unquestionably final, and no appeal was pending therein.

Nor are we impressed with appellant's contention that, the appeal from the first conviction having been pending at the time of the second, he was deprived of an "opportunity to reform because of the salutary discipline of the punishment which he has received as a consequence of the first conviction." Underhill on Criminal Evidence (3d ed.), 1080, § 772. Concededly, a defendant charged with being an habitual criminal should have been given an opportunity to reform after each conviction for each offense relied on to place him in that status. But at the time of the commission of his second offense, this appellant was out on bail awaiting the results of his appeal from conviction for his first. If he was not inclined to reform during this period, it cannot have been because he lacked either opportunity or incentive to do so.

Appellant's counsel has presented some very plausible arguments against our habitual criminal statute and the quite severe effect of its application in this case. However, the appellant's own voluntary acts brought him within its

purview. In a case in which a man received a heavy sentence after being adjudged to be an habitual criminal, which was affirmed by the supreme judicial court of Massachusetts, and was brought to the supreme court of the United States by writ of error, that court, speaking through Mr. Justice Gray, said, in part:

"The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire.

"But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime for not less than three years, in this, or in another State, or once in each. The punishment is for the new crime only, but is the heavier if he is an habitual criminal." *McDonald v. Massachusetts,* 180 U. S. 311, 312, 45 L. Ed. 542, 21 S. Ct. 389.

In a somewhat similar case, which later came to the supreme court of the United States, Mr. Justice Hughes, in delivering the opinion of the court, said:

"1. The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted. Statutes providing for such increased punishment were enacted in Virginia and New York as early as 1796, and in Massachusetts in 1804; and there have been numerous acts of similar import in many States. This legislation has uniformly been sustained in the state courts." *Graham v. West Virginia,* 224 U. S. 616, 623, 56 L. Ed. 917, 32 S. Ct. 583.

The judgment and sentence appealed from will stand affirmed. It is so ordered.

JEFFERS, C. J., SCHWELLENBACH, and GRADY, JJ., concur.

SIMPSON, J., concurs in the result.

---

August 6, 1949. Petition for rehearing denied.