[No. 36449.    Department One.    October 24, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD BADDA,
*Appellant*.*

*Nicholas A. Maffeo*, for appellant.
*Charles O. Carroll* and *William F. West*, for respondent.

*Reported in 385 P. (2d) 859.

HALE, J.—This is a case of robbery at the Kenmore Lanes Bowling Alley near Bothell in King County.

In the early morning hours of darkness, February 8, 1961, four men, their faces hooded with nylon stockings, entered the bowling alley and menaced the two lone occupants with drawn pistols. Two of the criminal quartet had weapons in hand; one carried a crowbar and the others, pieces of rope. They forced the janitor and the night manager—the other occupant—to lie face down on the restroom floor, and, while their victims were prone, took from the janitor his wallet. They tied the hands of the two captives behind their backs and secured the men to the restroom stalls. While the two employees of the bowling alley were thus held captive, the criminals rifled the cash register and fled, thereby completing two distinct acts of robbery.

Three men, the appellant, Edward Badda, and Dolan McCollum and Edgar Covert, were charged in the same indictment with two counts of robbery. A fourth man, Vernon Milton Hedrick, Jr., 17 years of age at the time of the robbery, joined the Army and was on active duty when apprehended. The plaintiff separately charged young Hedrick with the lesser offense of grand larceny. He entered a plea of guilty, was placed on probation under a deferment of sentence, remained in the Army, and returned to testify against the others. Other than the evidence given by Hedrick, an admitted participant, the record discloses no evidence that appellant Badda engaged in the robbery.

One day prior to trial of the three codefendants, the court, for reasons not here pertinent, granted the defendant Edgar Covert a separate trial. Thus, of the four men accused, two of them, Edward Badda, appellant, and Dolan Mc-Collum, were brought on for trial. Both defendants being indigent, the court appointed separate counsel for them. In separate verdict forms, each defendant was found guilty of both counts of robbery, and the jury, likewise on separate verdict forms, returned a special verdict that Edward Badda, at the time of the commission of the offense charged, was not armed with a deadly weapon and, conversely, that

Dolan McCollum was so armed. Four different verdict forms were thus separately returned—a circumstance made material in connection with the subsequent poll of the jury.

Appellant Badda appeals his conviction, urging, through different counsel appointed by the court to bring this appeal, a number of errors. We will discuss some of them.

The first assignment of error to be considered by us is directed to the testimony of Ronald Bright, a state parole officer, who related to the court and jury the details of an oral confession made by Dolan McCollum to him. Appellant's objection to this evidence of McCollum's culpability came to the court's attention in the following colloquy in support of a motion for a separate trial:

"[Appellant's counsel]: In behalf of Defendant Badda, at this time I would like to move the court again that we be granted a separate trial. The admission of this particular confession would be prejudicial.

"THE COURT: You may presume in your argument that if I admit this, I will not admit any part of the confession naming the confederates.

"[Appellant's counsel]: However, the fact that the crime was admitted by one of the co-defendants will prejudice, it is liable to prejudice the jury towards my client, and as such, I feel that he ought to be entitled, Your Honor, to a separate trial on this particular crime, rather than be faced with a possible prejudice of the jury as a result of a definite confession by one of his co-defendants.

"THE COURT: Well, I am not a great believer in having the jury instructed that the confession is only binding upon one person and to disregard it as to the other. I am inclined to grant separate trials rather than do that, because you're again calling the jury's attention to that which you tell them to forget, and that is a hard thing to do."

Pursuant to the court's admonition, all references to appellant Badda and any other participants in the offense were deleted by the witness in his testimony and appellant's name was not mentioned, but there was no admonition that the confession had no application to appellant. Appellant neither requested nor supplied an instruction containing such an admonition. The motion for a separate trial was denied.

■ Although the granting or denying of a separate trial rests in the sound discretion of the trial court (RCW 10.46.100), and will be reversed on appeal only for abuse of discretion (*State v. Taylor*, 47 Wn. (2d) 213, 287 P. (2d) 298; *State v. Dickey*, 181 Wash. 249, 42 P. (2d) 790; *State v. Clark*, 156 Wash. 47, 286 Pac. 69, 85 A.L.R. 502), our confirming the court's denial of a separate trial to appellant does not completely dispose of the assignment. We believe that it was error to fail to give a precautionary instruction making it clear to the jury that McCollum's confession could have no application to or be considered as evidence against appellant Badda. As we said in *State v. Taylor*, *supra*:

" . . . Confessions of one defendant, jointly tried with another, may be introduced in evidence; but in such cases, the defendant or defendants who did not make the confession and were not present when it was made should be protected by proper statements to the jury that the confession should not be considered as against him or them. . . . "

■ Our attention next turns to the assignment of error directed to remarks of the prosecuting attorney during voir dire examination of the jury. After all prospective jurors had been sworn for voir dire examination and 12 of their number had been seated in the jury box for examination seriatim, the deputy prosecuting attorney put this question to juror No. 1:

"Q. [Juror No. 1], do you realize that the State has little or no choice in the cases which it brings to trial, so long as we believe that a felony has been committed and we know the persons who perpetrated the felony. Do you understand that, sir? [Counsel]: I will object to that question, Your Honor. It is highly prejudicial. I ask for a mistrial, and I ask the jury be excused. The Court: The motion for mistrial will be denied. The objection to the question, sustained. [Counsel]: May I address the court in the absence of the jury, Your Honor? The Court: Not at this time. I might hear you later sometime."

The objection as stated and the motion for mistrial were made by the codefendant's counsel; there was no motion made for instructions that the jury disregard the statement.

That the trial judge promptly recognized the prejudicial nature of the remarks is indicated in his ruling on the objection. But we must assume that sustaining the objection, without more, did not expunge the prejudice created by them. We find them to be more objectionable and more damaging to the defendant than were the expressions of personal belief in the guilt of the accused by the prosecuting attorney in *State v. Susan*, 152 Wash. 365, 278 Pac. 149. The remarks made by the prosecuting attorney in the instant case go beyond expressions of belief in the guilt or innocence of the party on trial, statements uniformly held by the courts to be improper. The prosecuting attorney's assertion implies that there reposes in the state a wisdom or knowledge superior to and apart from that of its officers —a knowledge, both impersonal and damning, which sets in motion the inexorable process of prosecution where guilt is known. The statements were not only prejudicial, but curious indeed when considered in light of the circumstance that all of the evidence submitted by the state to connect the appellant with the crime came from an admitted accomplice to the robbery who not only was not brought to trial but was suffered to enter a plea of guilty to a markedly less serious offense.

The error here called at least for a pointed admonition to the jury to disregard the remarks. Moreover, neither counsel should declare his personal opinion as to the guilt or innocence of the accused. *State v. Case*, 49 Wn. (2d) 66, 298 P. (2d) 500; *State v. Susan, supra.*

■ Appellant assigns error to submitting his case to the jury solely on the uncorroborated testimony of Vernon Hedrick, an admitted accomplice. We find no other evidence in the case identifying the appellant as either a conspirator or actual participant in the robbery and confirm the trial court's statement, made in ruling on the admissibility of Hedrick's testimony that, "I think the testimony of the accomplice is completely uncorroborated as to the defendant Badda." The rule is long established in this state that the uncorroborated testimony of an accomplice is sufficient to support a conviction if the jury is instructed

that they may receive such evidence only with great care and caution, must subject it to careful consideration in the light of other evidence in the case, and should not convict upon such testimony alone unless, after a careful examination of it, they are satisfied beyond all reasonable doubt of its truth. *State v. Pearson*, 37 Wash. 405, 79 Pac. 985; *State v. Lowenthal*, 183 Wash. 14, 48 P. (2d) 909; *State v. Gross*, 31 Wn. (2d) 202, 196 P. (2d) 297. Though the record does not disclose that appellant requested any instruction on this subject, we feel that the actual charge to the jury on this point was inadequate to meet the requirements of this principle, lacking as it did the clarity to carry the point home to the jury.[1] The cautionary instruction on the testimony of an accomplice as set forth in *State v. Lowenthal, supra*, is more in keeping with the needs of the case.

The final assignment of error which we will consider is pointed at the court's failure to inform the jury, at any time during the trial or in the instructions, that their verdict must be unanimous. In submitting the cause the court instructed the jury to return their verdict on "two forms of verdict for each defendant" by filling in the words "guilty" or "not guilty" in the blank spaces for each count. It also furnished the jury with a special verdict form as to each defendant, and told them that, if their verdict was guilty, they were to find in such special verdict whether the guilty defendant was armed with a deadly weapon. Accordingly, six separate verdicts were to be returned.

Respondent argues that failure to instruct on the requirements of a unanimous verdict has been held not to be reversible error where the defendant neither requested nor submitted such an instruction; it asserts too that a poll of the jury leaves no room for doubt that the verdict was unanimous and was the result of each juror's individual

---

[1] "An essential fact may be proven by uncorroborated testimony of a witness who by his own testimony claims to have participated in the offense charged. However, such testimony should be scrutinized with care and not accepted unless it convinces the guarded judgment beyond a reasonable doubt." Instruction No. 6.

determination, citing *State v. Mickens*, 61 Wn. (2d) 83, 377 P. (2d) 240.

We had hoped to make it clear in the *Mickens* case, *supra,* that the constitutional right to a unanimous verdict was not compromised in any way by the want of such an instruction, for the record there established beyond doubt the total concurrence of all jurors. We meant just exactly this when we said, in that case:

" . . . since the jury was polled, there is no doubt that the verdict *was* unanimous and *was* the result of each juror's individual determination."

But we cannot view the record in the instant case as showing unanimity in the verdict with the same degree of assurance expressed by us in *State v. Mickens, supra*. The only reference we find in the record to the poll of the jury in the instant case is in a minute entry in the journal which reads:

"By direction of the court, the Jury is polled. Twelve Jurors answer it is their individual verdict and the verdict of the Jury. The verdict is received and filed and the court excuses the Jury from further consideration at 5:40 P. M."

That the poll of the jury in the *Mickens* case, *supra,* showed the verdict to be unanimous could confidently be stated, for it applied to one defendant charged with a solitary count of second-degree burglary. But in the instant case, we have the clerk's minutes describing the poll of the jury covering two defendants, each charged with two counts of robbery, and two separate special verdicts returned on the question of employment of a deadly weapon. Thus, the poll of the jury possibly encompassed six separate findings, all embodied in the clerk's meager minutes, that the poll showed all 12 jurors announced it was their individual verdict and the verdict of the jury.

This case involves multiple defendants, multiple counts and special verdicts. Under these circumstances, where the jury were never told that the concurrence of all 12 of them was essential to a verdict, and the record does not disclose the questions asked and the answers given in the poll of the jury, but simply the clerk's notation that it was unani-

mous, how can a court of review rule with the same degree of confidence that the clerk's minutes show a unanimous verdict? In a criminal case we must be certain that the verdict is unanimous; in *Mickens* we were; here we are not.

The combined effect of an accumulation of errors, no one of which, perhaps, standing alone might be of sufficient gravity to constitute grounds for reversal, may well require a new trial. *State v. Simmons*, 59 Wn. (2d) 381, 368 P. (2d) 378; *State v. Swenson*, 62 Wn. (2d) 259, 382 P. (2d) 614.

Reversed and a new trial ordered.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.