[No. 40021.   En Banc.   August 28, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. KATHERINE LOUISE HUFF, *Appellant.**

*Etter & Etter,* for appellant (appointed counsel for appeal).

*Donald C. Brockett,* for respondent.

*Reported in 458 P.2d 180.

HILL, J.—This is an appeal from a conviction of murder in the first degree, the sentence being life imprisonment as required by statute (RCW 9.48.030) when the jury does not impose the death penalty.

On the morning of January 26, 1967, James Huff was killed by a bullet entering the back of his head. The only witness to the shooting was his wife, Katherine Louise Huff, the appellant here. At the trial, she testified that the deceased had been quite despondent over their precarious financial condition and because of an affair he was carrying on with another woman. The appellant testified that when she went into their bedroom to waken her husband at about 9 a.m., he was lying on his side in the bed. As she entered the room, he "kind of raised up" and she saw that he had a gun in his hand. He said, "I am going to end this thing one way or another." She testified further that she got on the bed, "made a grab for the gun to throw it away —get it away from him and it went off."

We quote her testimony as to what followed:

I knew Jimmie was hurt and I pulled up the blankets, up around him, and I thought, 'Doctor, Doctor.'

. . .

I just covered him as best I could, and I think I thought, 'Doctor, Doctor.' And I don't remember anything more.

. . .

The next thing I remember I was in the kitchen standing at the cupboard, and I had the gun. I was changing it from one hand to the other, and it scared me and I ran and put it in the drawer.

She did not know how much time had elapsed since the shooting. The next thing she remembered was sitting in a chair and hearing the phone ringing. The phone call was from her brother, and the time is fixed at 10:15 or 10:30 a.m. on January 26th.

There was ample evidence as to both motive and intent to warrant the jury's disbelieving the appellant's account of what happened at the time of the shooting, and to warrant a finding that she had deliberately killed her husband.

The major issue on this appeal is whether the trial court excluded evidence offered by the appellant which would have tended to prove the absence of any intent to kill her husband.

The appellant claims that she was prejudiced by the court's ruling excluding certain expert testimony offered by the defense to support its theory that the killing occurred during an epileptic attack, and hence there could be no proof of intent to kill.

The basis for the ruling was that the expert testimony tended to prove that a person suffering from an epileptic attack would be mentally irresponsible, and that the appellant should not be allowed such testimony since she had not made a special plea of mental irresponsibility.

At the trial it was established that beginning in 1955 the appellant had suffered occasional epileptic seizures of a convulsive nature (grand mal).

Her doctor would have testified that when such a seizure occurs there is a sudden onset of unconsciousness, and that during the period of unconsciousness there may be a loss of memory or recall of all that transpires during such a seizure.

We are satisfied that the trial court properly refused this testimony, although not for the reason indicated. It is our view that there was no evidence to establish a foundation for such testimony. The only evidence to support the theory that the appellant had such a seizure was the claimed loss of consciousness or "blackout" which occurred after the gun went off, and she had pulled the covers up around her husband and "covered him as best she could."

We agree with the appellant that it is not necessary to plead mental irresponsibility in order to prove a lack of intent, but the trial court did not err in not permitting the doctor to testify concerning the possible effect of an epileptic seizure because of the appellant's own testimony that the "gun went off"; that she saw a blue blaze; and that she pulled the covers up around Mr. Huff, covering him as best she could. An epileptic seizure if it occurred after the shot was fired would have no bearing on the issue of intent.

Under the facts to which she had testified, the proffered testimony was neither relevant nor material to any issue before the jury.

■ Our conclusion on this evidentiary issue also has a direct bearing on the assignment of error relating to the failure to give an instruction on manslaughter. If here had been testimony that an epileptic seizure had preceded the firing of the gun, there would have been a basis for a contention that there could be no intent to kill, and a manslaughter instruction would have been proper. However, the evidence demonstrates that such a seizure, if there was one, occurred after the shot had been fired. The jury must conclude from the evidence either that the appellant intentionally shot the deceased, or, conclude from her own testimony, that the shooting was an accident incidental to her attempt to get possession of the gun. If the shooting was intentional, the appellant would be guilty of murder in the first degree, or murder in the second degree if there was no premeditation. The jury was so instructed. If the shooting was accidental, then the appellant should have been acquitted, and the jury was so instructed. There is no evidence indicating manslaughter, and under such circumstances a manslaughter instruction should not be given. *State v. Hicks,* 75 Wn.2d 73, 448 P.2d 930 (1968); *State v. Johnson,* 69 Wn.2d 264, 418 P.2d 238 (1966); *State v. Moore,* 61 Wn.2d 165, 377 P.2d 456 (1963).

The other assignments of error are of less significance.

Appellant sought to have introduced into evidence certain statements allegedly made by Mr. Huff to the appellant to the effect that the other woman in the case was more sexually satisfying than the appellant. It is urged that this would tend to show that the deceased's state of mind was such that he might have attempted to commit suicide.

We can understand how the excluded statement would increase sympathy for the appellant and would provoke contempt for the deceased, but just why or how such statements would evidence the possibility of suicide escapes us. The evidence of his financial difficulties and his domestic

difficulties arising from his own infidelities were much more pertinent to establishing a state of mind that might lead to suicide, and these were before the jury in considerable detail.

Error is assigned to the court's failure to give an instruction calling attention to the fact that witness George A. Stinebaugh had "lied" during his testimony. The witness is a brother of the appellant and had testified for the state. On cross-examination, his life history was brought out at some length. In the course of the historical narrative, he included an honorable discharge from the armed forces. A recess followed his cross-examination, and upon his being called for redirect examination, he admitted that he had gone A.W.O.L. and had received a dishonorable discharge. He stated that the rest of his testimony was true.

The trial court gave the pattern jury instruction on the credibility of witnesses including the following statement:

[I]f you do believe that any witness has wilfully testified falsely on any material matter, then you are at liberty to disregard the testimony of such witness entirely, except insofar as the same may be corroborated by other competent or credible proof in the case.

Under the instruction given by the trial court, the jury could adequately determine the weight to be given to Stinebaugh's testimony. Any argument the defense desired could have been made on the basis of that instruction.

To single out the testimony of a particular witness for discussion in an instruction (unless it be a particular class, such as an accomplice) seems to us to be argumentative, to be an invasion of the province of the jury, and to suggest the court's belief that the testimony of the witness is suspect. *See* Washington Pattern Jury Instructions, 6 Wash. Prac., 2.04, at 17 (1967). The trial court did not err in refusing to give the requested instruction.

Error is assigned to the failure to give many other requested instructions. These we do not discuss in detail. Some were slanted and some were proper statements of the law. However, no litigant has the right to have the jury

582

instructed in words of his own choosing. We are satisfied the jury was adequately instructed. We find nothing omitted which should have been included in the instructions given, and nothing included therein which should have been omitted.

Finding no error in the record, the conviction is affirmed.

ALL CONCUR.