[No. 43040.     En Banc.     August 15, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN VINCENT CAROTHERS, *Petitioner*.

[See 53 Am. Jur., Trial (1st ed. §§ 599, 787, 788).]

*John V. Carothers,* pro se, and *Judith S. Dubester,* for petitioner.

*S. Brooke Taylor, Prosecuting Attorney,* for respondent.

ROSELLINI, J.—The petitioner was found guilty on two counts of murder in the first degree and one count of robbery, and his conviction was upheld by the Court of Appeals. *State v. Carothers,* 9 Wn. App. 691, 514 P.2d 170 (1973). The opinion of the Court of Appeals, while correctly disposing of the petitioner's contentions, raises questions which this court has found it appropriate to consider. Therefore a petition for review has been granted.

The record shows that on September 3, 1971, the bodies of a retired Port Angeles businessman and his wife, Ronald and Wanda Buck, were found in their country home near Sequim. Each had been shot with a .22 caliber pistol held close to the head and positioned so that the shot caused instant death. The woman had apparently been bound and gagged and laid face down on her bed before she was shot. The man was lying on the kitchen floor. His wallet and a .357 magnum revolver which he had recently purchased and which was customarily kept in his clothes closet, were missing. Otherwise, the house was not disturbed and a pouch containing money was found in a dresser drawer.

The victims had no known enemies. They were well regarded and devoted much of their time to their church. There were no witnesses, no fingerprints, and no clues to

the identity of the person or persons who committed the crimes. Some 6 weeks later, one Joseph Lalak was involved in an automobile accident in Bellingham. He ran from the scene carrying a gun in a holster, which he dropped on the ground as officers apprehended him. The gun proved to be the revolver which had belonged to Ronald Buck.

After telling a number of obviously false stories about his acquisition of the revolver, Lalak was granted immunity by a special inquiry judge and then testified that he and the petitioner perpetrated these crimes, the petitioner doing the actual shooting and the taking of the property of the victims, and Lalak assisting him by keeping a lookout. At the trial he repeated this story without significant alteration. It contained inaccuracies of perception or memory but reflected obvious knowledge of the scene and circumstances of the crimes. The petitioner has not questioned Lalak's involvement.

The evidence at the trial showed that Lalak and the petitioner had been friends in prison in New York. After the petitioner was released, he married and went to live with his wife and her parents on a horse farm in Bothell. The petitioner later invited Lalak to join them there. At the time of the crimes, Lalak had been living in this household several months, helping the petitioner with work that he was doing around the barns. Lalak did not have a driver's license and was not permitted to drive any of the vehicles owned by the family.

In late August and early September 1971, the parents of petitioner's wife took a trip to Hawaii. Lalak testified that while they were gone he and the petitioner, using a car belonging to the latter's wife, took a trip around the Olympic Peninsula. They told the petitioner's wife that they were going on a diving job in connection with the salvage of a boat. They took with them a shotgun and a .22 caliber pistol belonging to the petitioner's father-in-law. After stopping in Raymond to buy shells for the shotgun, they drove around the northwestern part of Oregon and ate at a

restaurant in Tillamook. They then returned to Washington and spent the night in the car near the Rain Forest on the Olympic Peninsula. The next morning, which was September 3rd, they proceeded to Port Angeles and drove around the town looking for a place to rob. Finding nothing that suited them, they drove on toward Sequim, passing the home of the victims which was off the main road but visible from it. After they had driven some distance past the house, they turned around and returned to it and parked the car in front.

Lalak stated that he remained in the car while the petitioner went to the door and knocked. The door opened and the petitioner disappeared inside. Very shortly Lalak heard three shots fired. The petitioner appeared at the window and beckoned to Lalak, who then went in the house and observed a man lying on the kitchen floor in a pool of blood. The petitioner had a pistol in his hand, which he was loading, and which he put in its holster and handed to Lalak. This was the revolver which was found in Lalak's possession at the scene of the automobile accident some weeks later. It appears that it was not fired at the scene of the crimes.

Lalak saw a woman come out of one of the two bedrooms, holding her hands over her face, apparently dazed. Leaving Lalak to keep watch, the petitioner took the woman into the other bedroom, saying he was going to tie her up. In a few moments, Lalak heard another shot. The petitioner came out of the bedroom, walked to a place at the back of the kitchen, and then reappeared, carrying a wallet. Before the two left the house, the petitioner fired another shot at the man on the kitchen floor.

All of these events occurred in less than 5 minutes, according to Lalak's recollection. The two men returned to Bothell by way of the Port Townsend-Whidbey Island-Mukilteo ferries, the petitioner changing his clothes at a gas station on the way. Lalak said he did not know what had become of the wallet, which he thought contained less than $20.

The petitioner admitted that he had taken a trip to the Olympic Peninsula with Lalak but insisted that it had been during the second week of September. He denied that he had done the things which Lalak stated he had done. Both he and his wife told investigating officers and testified at the trial that Lalak had not taken any trips by himself. A search of the premises where the petitioner lived revealed hidden weapons, a box of shells and a sales slip from a hardware store in Raymond, Washington, dated September 2. There was other corroborative evidence which need not be detailed in this opinion. No challenge to the sufficiency of the evidence was made on appeal, and such a challenge could not properly have been entertained, since the petitioner did not see fit to include in the statement of facts all of the evidence which was presented to the jury, the exhibits having been omitted at the direction of his counsel. *See Heinz v. Blagen Timber Co.*, 71 Wn.2d 728, 431 P.2d 173 (1967); *Kane v. Kane*, 35 Wash. 517, 77 P. 842 (1904); and *State ex rel. Van Name v. Directors*, 14 Wash. 222, 44 P. 270 (1896).

■ The petitioner first maintains that the Court of Appeals should have set the judgment on the verdict aside for error in giving an instruction on aiding and abetting. The law is settled in this jurisdiction that a verdict may be sustained upon evidence that the defendant participated in the commission of the crime charged, as an aider or abettor, even though he was not expressly accused of aiding and abetting and even though he was the only person charged in the information. *State v. Frazier*, 76 Wn.2d 373, 456 P.2d 352 (1969); *State v. Brown*, 75 Wn.2d 611, 452 P.2d 958 (1969). Dictum in *State v. McCaskey*, 55 Wn.2d 329, 347 P.2d 895 (1959), indicating that this court subscribes to the view that when only one person has been indicted for a felony he cannot be convicted of aiding and abetting, was impliedly disavowed in *State v. Brown, supra,* and was expressly rejected in *State v. Frazier, supra.* That view is out of harmony with the expressed intent of RCW 9.01.030, which provides, *inter alia,* that every person concerned in

the commission of a felony, whether he directly commits the act constituting the offense or aids and abets in its commission, is a principal and shall be proceeded against and punished as such.

The petitioner was charged as principal upon two counts of premeditated murder and felony murder (robbery) and one count of robbery. The evidence concerning the condition of the bodies and the premises established beyond any doubt that such crimes had been committed. The only question was whether the petitioner was guilty of them. The jury may have found reason to doubt the testimony of Lalak that he was only a passive participant and that the petitioner held the gun, pulled the trigger, and took the wallet and revolver belonging to the victims. At the same time it could find entirely credible his testimony that the petitioner participated in the crimes and his admission of his own involvement, particularly since there was corroborative evidence of these facts.

The jury was not required, as suggested by the petitioner, to accept the testimony of Lalak in toto or reject it all.[1] It could reasonably infer that he was telling the truth when he said that the petitioner participated in the crimes, but that he was not accurately describing the events as they occurred and that he himself most probably played a more active role than he was willing to admit. The jury was not obliged to decide who held the gun or who committed the physical act of taking possession of the property of the victims. If it was convinced that the alleged crimes were committed and that the petitioner participated in each of them, it was justified in returning a verdict of guilty on each count. It was, therefore, proper for the trial court to instruct upon the provisions of RCW 9.01.030, in order that the jury could understand that it was not imperative that it determine the exact nature of the petitioner's participa-

---

[1] The petitioner requested an instruction that, if the jury believed that a witness had testified falsely on any matter, it was to disregard the testimony of that witness entirely except as corroborated by other evidence. The trial court correctly refused this instruction, as it mis-

tion in the crimes, if it was convinced that he did, indeed, participate.

The petitioner insists, however, that "aiding and abetting" is a separate method or mode of committing murder or robbery, that it requires a unanimous finding that this was the "way" the crime was committed, and that the jury should have been so instructed. No exception was taken upon this ground and no instruction embodying the theory was proposed, nor was the court requested to instruct the jury that its verdict on any count must be unanimous. The Court of Appeals considered and decided the question, nevertheless, since it relates to the constitutional right to jury trial. Const. art. 1, § 21; *State v. Badda*, 63 Wn.2d 176, 385 P.2d 859 (1963).

No case has been cited which holds that aiding and abetting constitutes a method or mode of committing a crime as those terms were used in *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970), relied upon by the petitioner. *State v. Cooper*, 26 Wn.2d 405, 414, 174 P.2d 545 (1946), holds to the contrary. In that case, the evidence tended to show that the appellant and one Mitchell had taken the victim in a car to a place on a country road north of Seattle, and there one of them had shot him. Claiming that he had not been present, Cooper introduced testimony that he had been elsewhere. There was evidence that he had offered to pay Mitchell to kill the victim.

The court instructed the jury:

"To convict the defendant Cooper of the crime of murder in the first degree, the State must satisfy you beyond a reasonable doubt of all of the following elements:

. . .

"(4-a) That the defendant Cooper acted in concert with the defendant Mitchell in the killing of said Walter Bernard Foley, Jr., or

"(4-b) That the defendant Cooper, not being present,

---

stated the law. A proper instruction is set forth in *State v. Huff*, 76 Wn.2d 577, 458 P.2d 180 (1969). The rule is that the jury is *at liberty* to disregard the uncorroborated testimony of a witness who it finds to have testified falsely on a matter, not that it is *required* to do so.

directly or indirectly aided, assisted, abetted, advised, encouraged or counseled the said killing of the said Walter B. Foley, Jr."

The appellant in that case contended that the instruction was erroneous in that, while the information described only one way in which the crime could have been committed (acting in concert), two ways were submitted for the consideration of the jury in arriving at its verdict, the second being aiding and abetting. We rejected this contention, having previously observed that the prosecutor, in drawing up an information, is not bound to elect between charging a defendant as a principal or as an accessory before the fact; that he may charge all defendants as principals, and, except in an unusual situation such as that presented in *State v. Gifford,* 19 Wash. 464, 53 P. 709 (1898) (where the defendant was charged with rape and the proof showed only that he acted as a procurer and was not present at the scene of the rape, and, therefore, could not have committed the crime charged), the defendants are thereby put on notice as to the nature of the charge.

In *State v. Cooper, supra,* this court distinguished *State v. Severns,* 13 Wn.2d 542, 125 P.2d 659 (1942), which was relied upon by the defendant. We had held in that case that, if the prosecutor charges a defendant under one subdivision of a statute which specifies different ways in which a crime may be committed, the case cannot be submitted to the jury under another subdivision, even though the proof shows that the crime was committed in a way specified in that subdivision. We adhered in that case to the principle that, since the manner of committing the crime is an element of the crime charged, the defendant must be apprised of this element in the information so that he can be prepared to defend against it.

In distinguishing that case, we noted that the court was there discussing the different means of committing a crime which were provided under separate sections of the statute defining the crime, and that aiding and abetting was not one of these. Finding the rule of *State v. Severns, supra,*

inapplicable, we held that the instruction was warranted by the evidence.

The correctness of this holding should be apparent. The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

In this case, it was necessary for the State to prove that the alleged crimes were committed—that is, that the victims were shot with premeditated design and/or in the perpetration of a robbery. It further was necessary for it to prove that the petitioner had participated in one or more of the crimes charged. The jury by its verdict found that he had participated in all of them.

There is no reason to doubt that the verdict was unanimous on each count. While the court did not include in its formal charge to the jury an instruction that its verdict must be unanimous, the panel was so instructed on voir dire before the jury was selected, according to the record before us. Furthermore, the jury was polled, and each member stated that all verdicts were his and were the verdicts of the jury. *See State v. Mickens,* 61 Wn.2d 83, 377 P.2d 240 (1962). The objection found in *State v. Badda, supra,* is not present in this case. There, there were multiple defendants, multiple counts and special verdicts; the jurors had answered on being polled that "it" was their individual verdict, and they had never been told that a unanimous verdict was required. Under these circumstances, the court could not be confident that *each* verdict was unanimous.

*State v. Golladay, supra,* strongly relied upon by the petitioner, is not in point. In that case, the defendant was charged with the crime of first-degree murder, alleged to have been committed in one of three ways, (1) by premeditated design to effect death, (2) by homicide occurring

during the commission of or withdrawing from the scene of a rape, or (3) by homicide occurring during the commission of or withdrawing from the scene of a larceny. All of the evidence in the case was circumstantial, and we found that there was no substantial evidence to support a finding that the murder was committed in connection with the crime of larceny. Since the jury was not instructed that its verdict must be unanimous as to any of the alternatives, we concluded that it could not be conclusively presumed that the jury had founded its verdict upon proof of one of the methods or modes which was supported by substantial evidence.

As the Court of Appeals, Division Two, has correctly interpreted *State v. Golladay, supra,* in *State v. Hutton,* 7 Wn. App. 726, 502 P.2d 1037 (1972), and *State v. Walters,* 8 Wn. App. 706, 508 P.2d 1390 (1973), it stands for the proposition that, when one is charged with having committed a crime by more than one method and there is a deficiency of proof as to one or more methods but the jury is, nevertheless, instructed as to those methods, the verdict must be set aside unless the court can ascertain that it was founded upon one of the methods with regard to which substantial evidence has been introduced.

The Court of Appeals was correct in holding that, under the provisions of RCW 9.01.030, it matters not that some jurors may have believed that the petitioner fired the gun, while others may have believed that his only role was in aiding and abetting Lalak, so long as all twelve agreed that he did participate, a finding which their verdict clearly reflects.

The petitioner also urges that the court cannot be certain that the verdicts were unanimous, because some jurors may have thought that the murders were premeditated, while others may have thought that there was no premeditation but that the killing was done in connection with a robbery. The Court of Appeals observed that, since the jury found the petitioner guilty of robbery, and since it found that he participated in the killing of the victims, it must necessar-

ily have agreed that he committed felony murder. This conclusion, which logic would seem to compel, is further buttressed by the fact, shown by the record, that the jury was told by the judge at the beginning of the trial that all twelve must agree upon a verdict, and the additional fact that each juror responded upon being polled that the verdict was his. Further, we have in mind that the jury is presumed to obey the admonitions of the trial court. Assuming then, without deciding, that in a case such as this, where the evidence indicates that the killing was both a premeditated and a felony murder, the rule of unanimity as to mode is properly applicable, the court can be confident that such unanimity was present in this case.

The Court of Appeals expressed the view that the courts of this state should abandon the dictum of *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970), found on page 137 of that opinion, and should adopt what it declares to be the prevailing view—that unanimity of mode of commission of a single crime is not required if (1) the modes charged are not repugnant, and (2) substantial evidence concerning each mode is submitted to the jury. *See* the cases cited in note 2 to *State v. Carothers,* 9 Wn. App. 691, 694-95, 514 P.2d 170 (1973). *And see State v. Stuhr,* 1 Wn.2d 521, 96 P.2d 479 (1939), and *State v. Talbott,* 199 Wash. 431, 91 P.2d 1020 (1939). There appears to be much to commend that approach. However, discretion dictates that we defer a decision upon the question until such time as the issue is presented in a case which requires its consideration.

The petitioner contended in the Court of Appeals and again urges here that the court committed prejudicial error in giving a standard instruction regarding accomplice testimony, instead of a variation of that instruction which he requested. The instruction given told the jury that the testimony of an accomplice, given on behalf of the State, should be acted upon with great care and caution and should be subjected to careful examination in the light of other evidence in the case. It further instructed that the

jury should not convict upon such testimony alone unless, after carefully examining it, it was satisfied beyond all reasonable doubt of its truth.

The petitioner's proposed instruction would have qualified the word "accomplice" with the phrase "or one who claims to be an accomplice." It is the theory of the petitioner, as we understand it, that without this qualifying phrase, the jury could not be expected to comprehend that it should subject to strict scrutiny that portion of the testimony of Lalak, which implicated the petitioner in the crime. Since it was the petitioner's involvement and not that of Lalak which was at issue, it would be an unwarranted affront to the intelligence of the jury to suppose that it did not understand the import of the instruction, namely, that it should act with caution upon the testimony of Lalak which implicated the petitioner. Such a suspicious view of that testimony may well have led the jury to the conclusion that, in recounting the event, Lalak reversed the roles which he and the petitioner played. The trial court observed that this was an inference which the jury might indeed draw.

The Court of Appeals properly concluded that the refusal of the petitioner's proposed qualification was not prejudicial error. It ventured the further opinion that accomplice instructions constitute a comment upon the evidence and as such are constitutionally impermissible, presumably referring to Const. art. 4, § 16, which provides:

Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

■ To constitute a comment on the evidence, it must appear that the court's attitude toward the merits of the cause are reasonably inferable from the nature or manner of the court's statements. *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971); *State v. Brown*, 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948).

■ An instruction to view the testimony of an accom-

plice with caution is an indication not of the judge's attitude toward the testimony of a particular witness, but of the attitude of the courts generally toward the testimony of witnesses of this type. It is an attitude which has been garnered from many years of observation of the prosecutorial process. The courts have an expertise upon this subject, which the ordinary citizen cannot be expected to have. They have observed that innocent persons may be sent to prison or to death upon the testimony of an accomplice. At the same time such testimony is not invariably false and it may be the only proof available.

Balancing the right of society to punish the guilty against the duty to protect an innocent person falsely involved by another who has been offered leniency or immunity for his testimony, the courts have evolved the rule that the jury must be advised that the accomplice is a special kind of witness, required, as a matter of law, to be given a special kind of attention. While we are advised by the prosecutor that there is a "trend" toward the elimination of this instruction in criminal trials, we are cited to no opinion of any court which has criticized it nor has our research disclosed any critical comment from within or without the courts. The Washington Pattern Jury Instructions (Civil), compiled in 1967 by a committee appointed by this court, has recommended that in a civil case no instruction be given on the credibility of special categories of witnesses. *See* WPI 2.09 and 2.10. As the comment will reveal, the committee was there dealing with instructions regarding the weight to be attached to the opinions of experts. The committee was not concerned with, and did not purport to make suggestions regarding the giving of instructions in criminal cases in general or upon the subject of accomplice testimony in particular.

In *State v. Adams*, 81 Wn.2d 468, 503 P.2d 111 (1972), the only other authority cited by the Court of Appeals, we were concerned with alibi instructions, and, noting that they may tend to confuse the jury regarding the burden of

proof, concluded that the better practice is not to give such an instruction. The question whether an instruction cautioning the jury about accomplice testimony should be given was not before the court and was not considered.

Far from being superfluous or objectionable, a cautionary instruction is mandatory if the prosecution relies upon the testimony of an accomplice. A conviction may rest solely upon the uncorroborated testimony of an accomplice *only* if the jury has been sufficiently cautioned by the court to subject the accomplice's testimony to careful examination and to regard it with great care and caution. *State v. Johnson,* 77 Wn.2d 423, 462 P.2d 933 (1969); *State v. Denney,* 69 Wn.2d 436, 418 P.2d 468 (1966); *State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963). We have observed that a cautionary instruction on accomplice testimony is not open to the objections which may be lodged against an instruction which singles out the testimony of a particular witness for discussion. The latter may well be argumentative, invading the province of the jury and suggesting the court's belief that the testimony of the witness is suspect. *State v. Huff,* 76 Wn.2d 577, 458 P.2d 180 (1969).

While the cautionary instruction may, in the circumstances of the case, apply only to one witness and the jury will have no doubt about the witness to whom the instruction is referrable, the court does not give the jury its evaluation of the particular witness before it. Rather, it instructs the jury about the provisions of a rule of law applicable to the class to which the witness belongs. It is a rule which has long found favor in the law, evolved for the protection of the defendant.[2] There has been no showing before this court that it impedes the administration of justice. We adhere, therefore, to the rule that a cautionary instruction is

[2]In many jurisdictions the giving of the instruction is discretionary, for example, in the federal courts, where comments by the judge, and the evaluation of witnesses is within the province of the court. *See United States v. Becker,* 62 F.2d 1007 (2d Cir. 1933) (opinion by Justice Learned Hand). Also, 6 L. Orfield, *Criminal Procedure under the Federal Rules* § 52.47, at 514 (1967). The subject is discussed at

proper where accomplice testimony is relied upon by the prosecution.[3]

The petitioner has filed a brief pro se, as he did in the Court of Appeals. The matters discussed in it were or could have been presented to the Court of Appeals, which correctly answered the contentions raised.

The decision of the Court of Appeals is affirmed. The dictum regarding the giving of cautionary instructions on accomplice testimony is, however, rejected.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied October 25, 1974.

---

some length in 2 J. Bishop, *New Criminal Procedure* §§ 1156-72, at 985-98 (1913). Bishop declares that, anciently, if the jury did not believe the accomplice and acquitted the defendant, the accomplice was hanged (on his confession).

[3] We do not mean to imply herein that the wording of the instructions used in this case is beyond improvement. The definition of an accomplice as "one who knowingly aids, abets, or assists another in the commission of the crime charged against such other," which was given by the trial court in this case, while a correct statement of the law, could be improved, we think, by simplification. The defining of an accomplice as one who admits his own participation in the crime charged, would be more appropriate in the context. Hopefully, this would reduce the fear, apparently entertained by the petitioner's counsel, that the jury will feel that it must find the defendant guilty first and then (too late) view the accomplice's testimony with suspicion.