# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75291-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C.M.F., | ) | |
| d.o.b. 08/26/00, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 12, 2017 |
| | ) | |

2017 JUN 12 AM 11: 59
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

VERELLEN, C.J. — C.F. appeals his adjudication of first degree assault as an accomplice to A.F., who stabbed Matthew Wilkerson in the chest with a deadly weapon. C.F. contends the trial court did not make adequate findings of the ultimate facts as to each element of the crime.

The trial court found A.F. assaulted Wilkerson with a deadly weapon with intent to inflict great bodily harm and that C.F. knew the assault was going to happen, encouraged it, and actively participated in it.

Because the court found A.F. "made the first move,"[1] he was the first aggressor and not entitled to a claim of self-defense. Because C.F. was an accomplice who knew the assault was going to happen, encouraged it, and actively participated in it, he was not entitled to self-defense or defense of another. Alternatively, to the extent the trial

---

[1] Clerk's Papers (CP) at 2.

court findings suggest C.F. may have had a reasonable belief to defend at the initiation of the confrontation, the trial court expressly found there was "no need to defend anything"[2] at the time C.F. blindsided Wilkerson before A.F. stabbed him. The trial court was not required to make any additional findings as to the unlawfulness of the force used by C.F. and A.F. The court satisfied the requirements of JuCR 7.11(d).

Finally, because the State presented sufficient evidence for any rational trier of fact to find the elements of first degree assault beyond a reasonable doubt, C.F.'s challenge to the sufficiency of the evidence fails.

We affirm.

### FACTS

On January 4, 2016, C.F. and A.F. rode the bus to Mount Vernon, Washington, Skagit County. The bus driver asked A.F. and C.F. to come forward to pay at the next bus stop. When they came forward to pay, Devin Belwood and Matthew Wilkerson got on the bus. C.F. and Belwood passed each other towards the front of the bus and exchanged a "provocative/confrontational stare."[3] C.F. and A.F. returned to their seats. The bus stopped at the Mount Vernon transit station.

C.F. and A.F. exited the bus through the back door. A.F. walked to a post near the front of the bus. C.F. stopped before the post and before the front doors of the bus, and looked back at the bus. Wilkerson and Belwood exited the bus, and C.F. took a step toward Belwood. C.F. said something, and Belwood said something back and threw his coat to the ground. There was posturing between Belwood, C.F., and A.F.

---

[2] CP at 4.

[3] CP at 2.

2

A.F. "made the first move" toward Belwood, and they exchanged punches.[4] Wilkerson restrained A.F., and C.F. took swings at Wilkerson. C.F. struck Wilkerson, landing strikes on his head as he held A.F.

Wilkerson described the remaining portion of the fight that happened off camera. C.F. "blindsided" Wilkerson and then A.F. stabbed Wilkerson in the chest. Wilkerson did not know he was stabbed immediately, but he said he felt a pinch when A.F. struck him.

Wilkerson was transported to the emergency room, underwent surgeries, and spent six days in the hospital.

The trial court concluded there was an intentional assault designed to cause great bodily harm. The doctor described the injuries, done with a device that was "knife-like" that could cause great bodily harm. The court found that A.F. used a deadly weapon intentionally with force likely to cause great bodily harm. The court concluded C.F. was an accomplice, "C.F. did aid, abet, and encourage the assault to occur."[5] Instead of walking away, "he moved towards them, he initiated the verbal confrontation, and was actively involved with assisting in the assault."[6] Notably, the trial court found "C.F. was involved; he knew the assault was going to happen, [and] assisted in it." [7]

The trial court found C.F. guilty of assault in the first degree and imposed a standard range of commitment to Juvenile Rehabilitation Administration for 103 to 129 weeks.

---

[4] CP at 2.
[5] CP at 4.
[6] CP at 4.
[7] CP at 4.

C.F. appeals.

## ANALYSIS

C.F. contends the trial court's findings violate JuCR 7.11(d) because they do not state the ultimate facts as to each element of the crime. That rule provides:

> (d) Written Findings and Conclusions on Appeal. The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.[8]

The juvenile court's findings of fact must state the ultimate facts necessary to support each element of the crime, and failure to do so will result in remand for entry of sufficient findings and conclusions of law.[9]

Here, the trial court concluded that C.F. was an accomplice to A.F.'s first degree assault. Under the State's theory, the court had to find that A.F. committed first degree assault and that C.F. was legally accountable for A.F.'s conduct.

The State had to prove A.F., with intent to inflict great bodily harm, assaulted another with a deadly weapon or by any force or means likely to produce great bodily harm or death.[10]

The trial court found that A.F. started the fight: "A.F. made the first move to Devin Belwood and punches were thrown."[11] The court found "A.F. is the one who

---

[8] JuCR 7.11(d).

[9] State v. Alvarez, 128 Wn.2d 1, 17, 19, 904 P.2d 754 (1995).

[10] RCW 9A.36.011.

[11] CP at 2.

stabbed Matthew Wilkerson."[12] The court found "there was an intentional assault, designed to cause great bodily harm."[13] The court also found "A.F. used a deadly weapon intentionally with force [likely] to cause great bodily harm"[14]

We conclude the trial court's findings state the ultimate facts as to each element of assault in the first degree by finding A.F. assaulted another with a deadly weapon with the intent to inflict great bodily harm.

To prove C.F. was an accomplice to A.F.'s first degree assault, the State had to prove C.F. was legally accountable for A.F.'s conduct.[15] A person is an accomplice of the other person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, or requests the other person to commit it, or aids or agrees to aid the other person in planning or committing it.[16] The court's findings that C.F. knew the assault was going to happen, encouraged it, and actively participated in it are ultimate facts establishing accomplice liability.

C.F. contends the trial court failed to make findings of ultimate facts as to the unlawfulness of force used by A.F. and C.F.

A first aggressor is not entitled to self-defense, unless he in good faith withdraws first from the combat.[17] An individual is justified in using force necessary to protect

---

[12] CP at 4.

[13] CP at 4.

[14] CP at 4.

[15] RCW 9A.08.020(6).

[16] RCW 9A.08.020(3)(a)(i), (ii).

[17] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

another person only if the individual reasonably believes the other person is an innocent party and in danger.[18] Whether an individual participates in a crime as an accomplice or a principal, his or her culpability is the same.[19] Therefore, an accomplice who, knowing an assault is going to take place, encourages and actively participates in that assault by the first aggressor, is not entitled to self-defense or the defense of another.

Here, the trial court found that after C.F. and A.F. exited the bus, "C.F. took a step toward Devin Belwood and said something."[20] The court found:

> The key here for C.F. is he did not inflict the harm, but was he an accomplice? Yes, C.F. did aid, abet, and encourage the assault to occur. C.F. did not walk away, he moved towards them, he initiated the verbal confrontation, and was actively involved with assisting in the assault.[21]

The court found that C.F. engaged in "assaultive behavior" when he blindsided Wilkerson by striking him in the side of the head.[22] And C.F. "knew the assault was going to happen, assisted in it, and will be held accountable and found guilty of Assault in the First Degree."[23]

The trial court foreclosed any potential self-defense or defense of another claim from A.F. or C.F. because it found that A.F. was the first aggressor: "C.F. took a step toward Devin Belwood and said something" and "A.F. *made the first move* to Devin

---

[18] State v. Bernardy, 25 Wn. App. 146, 148, 605 P.2d 791 (1980) (emphasis added).

[19] State v. McDonald, 138 Wn.2d 680, 688, 981 P.2d 443 (1999) (quoting State v. Carothers, 84 Wn.2d 256, 264, 525 P.2d 731 (1974)).

[20] CP at 2.

[21] CP at 4.

[22] CP at 3.

[23] CP at 4.

6

Belwood and punches were thrown."[24] The surveillance video corroborates the court's description of the events. The altercation continued off camera. C.F. blindsided Wilkerson and A.F. stabbed him. The court found C.F. knew the assault was going to occur, encouraged it, and actively participated in it. In this setting, C.F. was not entitled to claim self-defense or the defense of the first aggressor.

C.F. focuses on the trial court's acknowledgment that C.F.'s initial intent may have been to defend.[25] But even ignoring the court's first aggressor findings and viewing the observations about C.F.'s possible initial intent as consistent with a reasonable belief A.F. was innocent and in danger when the confrontation started, the court's findings preclude any claim of defense. The court ultimately found there was "no need to defend anything"[26] and "no danger for force to be employed by C.F. or A.F."[27] when C.F. blindsided Wilkerson just before A.F. stabbed Wilkerson. Those findings that there was nothing to defend at the critical stage of the fight adequately address any question of unlawfulness of the force used by C.F. and A.F.[28] The trial court was not required to make any additional ultimate findings to satisfy JuCR 7.11(d).

---

[24] CP at 2 (emphasis added).

[25] CP at 3 ("At that point in time it might have been reasonable, considering the confrontational nature of what had already happened, for C.F. to go to the assistance of his friend."); CP at 4 ("There is reasonable doubt as to whether C.F. was aiding or defending initially.").

[26] CP at 4.

[27] CP at 3.

[28] CP at 4. The trial court also made observations about C.F.'s reasonable belief given the context of the fight, but consistent with its first aggressor determination, it ultimately determined C.F. had no reasonable basis to defend A.F. See CP at 3 ("[T]here was no danger for force to be employed by C.F. or A.F. at that time. Matthew Wilkerson was then blindsided by C.F. by being struck about the side of the head while A.F. was on the ground. C.F.['s] act was assaultive behavior. Shortly thereafter, A.F. stabbed Matthew Wilkerson.").

Finally, C.F. contends insufficient evidence was admitted at trial that C.F. knew his conduct would promote or facilitate the commission of an assault. When we review the sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[29] All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant.[30]

C.F. concedes the evidence, in the light most favorable to the State, establishes that "C.F. aided A.F. in stabbing Mr. Wilkerson."[31] C.F. argues that the State failed to introduce evidence that established C.F. knew A.F. was armed with a knife or deadly weapon.

But in In re Personal Restraint of Sarausad, this court concluded:

> From this, we conclude that the law of accomplice liability in Washington requires the State to prove that an accused who is charged as an accomplice with murder in the first degree, second degree or manslaughter knew generally that he was facilitating a homicide, but need not have known that the principal had the kind of culpability required for any particular degree of murder. *Likewise, an accused who is charged with assault in the first or second degree as an accomplice must have known generally that he was facilitating an assault, even if only a simple, misdemeanor-level assault, and need not have known that the principal was going to use deadly force or that the principal was armed.*[32]

Here, the State was not required to prove C.F. knew A.F. was armed with or would use a knife. Therefore, the evidence is sufficient to prove that A.F. committed assault in the first degree.

---

[29] State v. Joy, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993).

[30] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[31] Appellant's Br. at 19.

[32] 109 Wn. App. 824, 836, 39 P.3d 308 (2001) (emphasis added).

C.F. also contends the State failed to present substantial evidence that C.F. knew A.F. would commit an assault. His argument fails. The State presented evidence that showed C.F. approached and began exchanging words with Belwood. A.F. charged at Belwood, swinging his fists, and C.F. joined in striking Wilkerson. Viewed in a light most favorable to the State, there is circumstantial evidence C.F. knew an assault would occur.

Affirmed.

WE CONCUR:

Trickey, J

Cox, J.