# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>v.<br><br>JERRY BRAND BOGART,<br><br>     Appellant. | No. 78057-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: September 16, 2019 |

SMITH, J. — Jerry Bogart challenges the judgment and sentence imposed pursuant to his jury conviction for first degree assault with a deadly weapon and unlawful possession of a firearm. He contends that the trial court erred when it declined to give a cautionary instruction regarding the testimony of a prison informant. But the trial court's general instruction on witness credibility instructed the jury to consider "any personal interest that the witness might have in the outcome or the issues." This instruction was sufficient to allow Bogart to argue that the witness had a motivation to lie. Moreover, we have previously held that an instruction to view a particular witness's testimony with caution is improper because it constitutes an impermissible comment on the evidence.

However, we agree with the parties that the trial court erroneously imposed a firearm enhancement despite the jury returning a special verdict that Bogart was armed with a deadly weapon. The criminal filing fee and DNA

(deoxyribonucleic acid) collection fee must also be stricken. We remand for resentencing consistent with this opinion. In all other respects, we affirm.

FACTS

Kelly LeMoigne and his wife, Vicki Ecklund, were long-time users of methamphetamine.[1] Ecklund had worked off and on as a paid informant for law enforcement dating back to 1996. At some point in 2015 or 2016, both Ecklund and LeMoigne provided information to the police about a drug dealer named James Stevens, resulting in Stevens' arrest.

In the early morning hours of March 23, 2016, Ecklund contacted Bogart, from whom she and LeMoigne had bought methamphetamine in the past. Ecklund told Bogart that LeMoigne would contact him to arrange a time and meeting place to buy methamphetamine. However, Bogart was friends with Stevens and "[h]omicidely" angry that Ecklund and LeMoigne "were rats."

When LeMoigne arrived at the meeting place, Bogart was already there, standing in front of his car. LeMoigne parked so his car was facing Bogart's car, nose to nose. Without getting out of his car, LeMoigne handed Bogart money. In exchange, LeMoigne received a cigarette pack that he believed contained methamphetamine. He later discovered it contained only salt.

LeMoigne turned to put the cigarette pack in his center console. When he turned back around, he "got sucker punched." Bogart called LeMoigne a "rat" and said, "'This is for James's niece.'" Bogart drew back his hand a second time.

---

[1] At the time of trial, LeMoigne was suffering from advanced esophageal cancer and testified by way of a perpetuation deposition.

Believing Bogart was going to hit him again, LeMoigne sped off, hitting Bogart's car. Bogart fired several shots at LeMoigne as he drove off.

While driving back to his house, LeMoigne received a voice mail message from Bogart. In the message, Bogart asked, in a friendly tone of voice, where LeMoigne went and stated he was concerned about him. Apparently believing that he had terminated the call with LeMoigne, Bogart then proceeded to have a separate conversation with someone on his end of the phone. In a threatening tone, Bogart stated that LeMoigne and Ecklund were "rats." He stated that he had tried to kill LeMoigne and that if he saw him again he was "'[g]oing to kill him.'" Bogart's conversation was recorded on LeMoigne's voice mail.

The State charged Bogart with first degree assault with a firearm and two counts of first degree unlawful possession of a firearm. Prior to trial, Bogart shared a jail cell with Tyler Vorderstrasse for approximately four to six weeks. Vorderstrasse had known Bogart for several years, and they shared many mutual friends. Vorderstrasse also knew LeMoigne, Ecklund, and Stevens.

Vorderstrasse testified at trial. He stated that while they were cellmates, Bogart told him that he punched LeMoigne and called him a "rat" because LeMoigne and Ecklund had done a "controlled buy" involving Stevens. Bogart also said he fired shots as LeMoigne drove away, hitting LeMoigne's car. Bogart told Vorderstrasse that after he shot at LeMoigne, he took a shower, washed his clothes to remove any gunshot residue, and cleaned his gun. He also detailed plans to hide his own car, which had been struck by his bullets.

3

Vorderstrasse testified that he voluntarily provided this information to law enforcement "with no offer of anything in return." But Vorderstrasse acknowledged that the State ultimately agreed to reduce a pending charge against him in exchange for his testimony against Bogart. And Vorderstrasse testified that he had previously cooperated with law enforcement in a different matter and knew that if he "gave information [he] would get a deal."

Bogart requested that the jury be instructed to consider the testimony of an informant "with greater caution than that of other witnesses." Bogart proposed the following jury instruction, based on a Ninth Circuit model jury instruction:

> You have heard testimony from Tyler Vorderstrasse. That testimony was given in exchange for a promise by the government that the witness receive beneficial treatment from the government in connection with this case.
>
> For this reason, in evaluating the testimony of Tyler Vorderstrasse, you should consider the extent to which or whether his testimony may have been influenced by this beneficial treatment.
>
> In addition, you should examine the testimony of Tyler Vorderstrasse with greater caution than that of other witnesses.

The trial court declined to give the instruction.

Bogart testified in his own defense. He admitted that he planned to give LeMoigne a package containing salt instead of methamphetamine and then to punch LeMoigne. But he denied that he intended to cause LeMoigne great bodily harm by shooting at him. Instead, he claimed he did so in self-defense, believing that LeMoigne was going to hit him with his car.

A jury convicted Bogart as charged. Bogart appeals.

DISCUSSION

Bogart contends that the trial court violated his right to present a defense when it refused to give the instruction regarding Vorderstrasse's testimony. Citing federal case law and academic studies, he argues that "the testimony of a prison informant is inherently untrustworthy" and "is strongly correlated to wrongful convictions."

Instructions are adequate if they allow a party to argue its theory of the case and do not mislead the jury or misstate the law. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). We review a trial court's decision to give a jury instruction for abuse of discretion if the decision was based on a determination of fact. State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015). If the decision was based on a legal conclusion, it is reviewed de novo. Condon, 182 Wn.2d at 316.

Here, Bogart's proposed instruction was not necessary in order for him to argue that Vorderstrasse's testimony was inherently untrustworthy. Bogart extensively cross-examined Vorderstrasse on what benefit he received for his testimony and at what point he received it. And the jury was already instructed on how to evaluate the credibility of witnesses. The trial court's first instruction to the jury provided as follows:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying;

*any personal interest that the witness might have in the outcome or the issues*; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

(Emphasis added.) It is not error for a trial court to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theory of the case. State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253 (2011). Because Bogart was able to argue his theory of the case under the instructions given, the trial court did not abuse its discretion in declining to give it.

Relying on State v. Carothers, 84 Wn.2d 256, 267-68, 525 P.2d 731 (1974), Bogart contends that the informant instruction is "no different from the pattern instruction on accomplice testimony in WPIC 6.05, which the Supreme Court has ruled is not a comment on the evidence." But in Carothers, the Washington Supreme Court held that such an instruction is proper only if it instructs the jury to view *any* accomplice testimony with caution. It noted that an instruction to view the testimony of a *particular* witness with caution would be an improper comment on the testimony of that witness. Carothers, 84 Wn.2d at 267-68.

Instead, this court has previously held that a trial court does not abuse its discretion in declining to give an informant instruction. In State v. Hummel, 165 Wn. App. 749, 266 P.3d 269 (2012), we noted that no Washington case requires a jury to be instructed as to the potential untrustworthiness of informant testimony. We also concluded that the informant instruction was more similar to

an instruction cautioning the jury about the untrustworthiness of cross-racial eyewitness testimony—which was held to be a comment on the evidence in State v. Allen, 161 Wn. App. 727, 255 P.3d 784, aff'd, 176 Wn.2d 611, 294 P.3d 679 (2013)—than it was to the accomplice instruction suggested by Bogart.[2] "Any instruction that could lead the jury to infer that the trial court believed or disbelieved a witness constitutes a judicial comment on the evidence." Allen, 161 Wn. App. at 742 (citing State v. Faucett, 22 Wn. App. 869, 876, 593 P.2d 559 (1979)). Bogart has not convinced us to depart from our earlier rationale in Hummel.

Bogart next contends, and the State concedes, that the trial court erroneously imposed a firearm enhancement when the jury returned a special verdict finding that Bogart was armed with a deadly weapon. We accept the State's concession, vacate the firearm enhancement, and remand for resentencing consistent with the jury's special verdict.[3]

Finally, Bogart challenges the criminal filing fee and DNA collection fee imposed as part of his sentence. Bogart contends, and the State concedes, that both fees must be stricken because he is indigent and because his DNA was

---

[2] We note, as we did in Allen, that such an instruction might be appropriate in a federal case, "where there is no constitutional prohibition from the judge commenting on matters of fact," but not in Washington, where our constitution contains such a prohibition. Allen, 161 Wn. App. at 740.

[3] Bogart also contends that because the jury did not find he was armed with a firearm, the trial court must vacate the order to register as a felony firearm offender. But RCW 9.41.330 provides: "[W]henever a defendant in this state is convicted of a felony firearm offense . . . the court must consider whether to impose a requirement that the person comply with the registration requirements of RCW 9.41.333 and may, in its discretion, impose such a requirement." Bogart was convicted of unlawful possession of a firearm, which is a "felony firearm offense." RCW 9.41.010(10)(a). Thus, the trial court had the authority to impose the registration requirement.

7

collected following a prior felony conviction. Although these fees were mandatory when imposed, the Washington Supreme Court has since held in State v. Ramirez, 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018), that courts may not impose discretionary legal financial obligations on an indigent criminal defendant. We accept the State's concession and remand for the trial court to strike these fees from the judgment and sentence.

We affirm Bogart's convictions. We remand to the trial court to vacate the firearm enhancement, resentence Bogart based on the deadly weapon enhancement, and strike the criminal filing fee and DNA collection fee from the judgment and sentence.

WE CONCUR: